OSCAR L. GRAF et al., as Executors and Trustees under the Will of JOSEPH L. GRAF, Deceased, Appellants, *v.* HOPE BUILDING CORPORATION, Respondent, Impleaded with Others.

(Argued March 18, 1930; decided May 13, 1930.)

*David Steckler* and *Edmund B. Hennefeld* for appellants. Equity will not relieve the respondent from its default. (*Bennett* v. *Stevenson,* 53 N. Y. 508; *Noyes* v. *Anderson,* 124 N. Y. 175; *Valentine* v. *Van Wagner,* 37 Barb. 60; *Dwight* v. *Webster,* 32 Barb. 47; *Smith* v. *Lamb,* 59 Misc. Rep. 568; *Ferris* v. *Ferris,* 28 Barb. 29; *Heinitz* v. *Shushansky,* 199 App. Div. 936; *Trowbridge* v. *Malex Realty Corp.,* 198 App. Div. 656; *Bard* v. *Rabinfried Realty Co.,* 126 Misc. Rep. 427.) The maxim *de minimis non curat lex* cannot apply to a default in a case of mortgage foreclosure. (1 Wiltsie on Mortgage Foreclosure [4th ed.], p. 81; Real Property Law, § 254, subd. 2.) No relief will be granted in the absence of fraudulent or other conduct on the part of the mortgagee inducing the default. (*Heinitz* v. *Shushansky,* 199 App. Div. 936; *Pizer* v. *Herzig,* 120 App. Div. 102; *Ferris* v. *Ferris,* 28 Barb. 29; *Hothorn* v. *Louis,* 52 App. Div. 218; 170 N. Y. 576; *Martin* v. *Clover,* 45 N. Y. St. Repr. 44; 137 N. Y. 615; *Cole* v. *Hinck,* 120 App. Div. 355; *Bennett* v. *Stevenson,* 53 N. Y. 508; *Noyes* v. *Anderson,* 124 N. Y. 175; *Trowbridge* v. *Malex Realty Corp.,* 198 App. Div. 656; *Valentine* v. *Van Wagner,* 37 Barb. 60.)

*Herbert R. Limburg, Harry F. Mela, Herman A. Brand* and *Joseph L. Weiner* for respondent. The alleged default on the defendant-respondent's part falls within the maxim *de minimis non curat lex.* (*Douglass* v. *Mainzer,* 40 Hun, 75; *Matter of Becker,* 4 Hill, 613; *Freese* v. *Blos,* 248 Ill. 280; *Blos* v. *Berritz,* 190 Ill. 545; *Colman* v. *Shattuck,* 62 N. Y. 349; *Hixon* v. *Oneida County,* 82 Wis. 575; *Gammaway* v. *Street Improvement Dist.,* 164 Ark. 407; *Workman* v. *Worcester,* 118 Mass. 168.) A court of equity has power to relieve a mortgagor from a default which is not willful. (*Broderick* v. *Smith,* 15 How. Pr. 434; *Lynch* v. *Cunningham,* 6 Abb. Pr. 94; *Noyes* v. *Anderson,* 124 N. Y. 175; *Shaw* v. *Wellman,* 59 Hun, 447; *Ver Planck* v. *Godfrey,* 42 App. Div. 16; *Schieck* v. *Donohue,* 92 App. Div. 330; *Isaacs* v. *Baldwin,*

105 N. Y. Supp. 38; *Germania Life Ins. Co. v. Potter*, 124 App. Div. 814; *Smith v. Lamb*, 59 Misc. Rep. 568; *Strange v. Rosenberg*, 101 Misc. Rep. 618; *Loughery v. Catalano*, 117 Misc. Rep. 393; *Trowbridge v. Malex Realty Corp.*, 198 App. Div. 656; *Bard v. Rabinfried Realty Co., Inc.*, 126 Misc. Rep. 427; *Nove Holding Corp. v. Schechter*, 218 App. Div. 479; *Besas v. Slobodoff*, 129 Misc. Rep. 205.) The rule is applicable to defaults in paying interest as well as to those involving taxes. (*Nove Holding Corp. v. Schechter*, 218 App. Div. 479; *Bard v. Rabinfried Realty Co.*, 126 Misc. Rep. 427; *Giles v. Austin*, 62 N. Y. 486; *Palmer & Singer Mfg. Co v.. Barney Estate Co.*, 149 App. Div. 136; *Horton v. N. Y. C. R. R. Co.*, 12 Abb. N. C. 30; 102 N. Y. 697; *Giles v. Austin*, 52 N. Y. 486; Real Property Law, § 254.)

O'BRIEN, J. Plaintiffs, as executors of Joseph L. Graf, are the holders of two consolidated mortgages forming a single lien on real property the title to which is vested in defendant Hope Building Corporation. According to the terms of the agreement consolidating the mortgages the principal sum is made payable January 1, 1935. Nevertheless, a clause provides that the whole shall become due after default for twenty days in the payment of any installment of interest. David Herstein is the controlling stockholder and also president and treasurer of defendant. He alone was authorized to sign checks in its behalf. Early in June, 1927, he went to Europe. Before his departure a clerical assistant who was also the nominal secretary of the corporation computed the interest due July 1, and through an error in arithmetic incorrectly calculated it. Mr. Herstein signed the check for the erroneous amount but before the date upon which the interest became due, the secretary discovered the error, notified the mortgagee of the shortage of $401.87, stated that on the president's return from Europe the balance would be paid and on June 30 forwarded to the mortgagee the check as drawn. It was deposited by the mortgagee

and paid by defendant. On July 5 Mr. Herstein returned, but, through an omission in his office, he was not informed of the default in the payment of interest. At the expiration of twenty-one days this action of foreclosure was begun. Defendant made tender of the deficiency but the mortgagee, strictly insisting on his contract rights, refused the tender and elected to assert the power created by the acceleration clause in the consolidation agreement.

On the undisputed facts as found, we are unable to perceive any defense to the action and are, therefore, constrained to reverse the judgment dismissing the complaint. Plaintiffs may be ungenerous, but generosity is a voluntary attribute and cannot be enforced even by a chancellor. Forbearance is a quality which under the circumstances of this case is likewise free from coercion. Here there is no penalty, no forfeiture (*Ferris* v. *Ferris*, 28 Barb. 29; *Noyes* v. *Anderson*, 124 N. Y. 175, 180), nothing except a covenant fair on its face to which both parties willingly consented. It is neither oppressive nor unconscionable. (*Valentine* v. *Van Wagner*, 37 Barb. 60.) In the absence of some act by the mortgagee which a court of equity would be justified in considering unconscionable, he is entitled to the benefit of the covenant. The contract is definite and no reason appears for its reformation by the courts. (*Abrams* v. *Thompson*, 251 N. Y. 79, 86.) We are not at liberty to revise while professing to construe. (*Sun P. & P. Assn.* v. *Remington P. & P. Co.*, 235 N. Y. 338, 346.) Defendant's mishap, caused by a succession of its errors and negligent omissions, is not of the nature requiring relief from its default. Rejection of plaintiffs' legal right could rest only on compassion for defendant's negligence. Such a tender emotion must be exerted, if at all, by the parties rather than by the court. Our guide must be the precedents prevailing since courts of equity were established in this State. Stability of contract obligations must not be undermined by judicial sympathy. To allow this judgment to stand would con-

stitute an interference by this court between parties whose contract is clear. One has been unfortunately negligent but neither has committed a wrong. If defendant's president had left some person in charge with authority to deal with affairs as they might arise, the first error could have been immediately corrected and the second would not have occurred. Even after Mr. Herstein's return on July 5, two weeks remained before the expiration of the twenty days. The secretary's forgetfulness during this time is not sufficient excuse for a court of equity to refuse to lend its aid to the prosecution of an action based upon an incontestably plain agreement. Such a refusal would set at nought the rules announced and enforced for a century in such cases as *Noyes* v. *Clark* (7 Paige, 179); *Hale* v. *Gouverneur* (4 Edw. Ch. 207); *Ferris* v. *Ferris* (*supra*); *Valentine* v. *Van Wagner* (*supra*); *Malcolm* v. *Allen* (49 N. Y. 448); *Bennett* v. *Stevenson* (53 N. Y. 508); *Hothorn* v. *Louis* (52 App. Div. 218; affd., 170 N. Y. 576). The words of Chancellor WALWORTH in *Noyes* v. *Clark* (*supra*) express the rule which has since prevailed in respect to the rights of a mortgagee against a defaulting mortgagor under an acceleration clause: " The parties  *  *  * had an unquestionable right to make the extension of credit dependent upon the punctual payment of the interest at the times fixed for that purpose. And if, from the mere negligence of the mortgagor in performing his contract, he suffers the whole debt to become due and payable, according to the terms of the mortgage, no court will interfere to relieve him from the payment thereof according to the conditions of his own agreement. (*Steel* v. *Bradfield*, 4 Taunt. Rep. 227; *James* v. *Thomas*, 5 Barn. & Adol. 40.)" *Ferris* v. *Ferris* (*supra*) illustrates the application of that rule when the court, holding that the acceleration clause works neither a forfeiture nor a penalty, rejected a defense founded upon the fact that the mortgagor was unacquainted with business and suffered the day of payment to arrive sooner in consequence

of her own negligence than she would otherwise have done. This court has never departed from that rule. Cases can be found in other courts where the facts may be so distinguished as to take them out of the rule or where other theories have been applied in a way which fails to meet with our approval. We feel that the interests of certainty and security in real estate transactions forbid us, in the absence of fraud, bad faith or unconscionable conduct, to recede from the doctrine that is so deeply imbedded in equity.

Reliance is placed by respondent upon *Noyes* v. *Anderson* (*supra*), but we think that the reasoning in that case requires a reversal here. There the issue related to the effect upon a collateral agreement of a default in the payment of an assessment, and the court, giving full recognition to the principles of the cases above cited, decided that the breach of a condition subsequent in that agreement, unlike a default in the payment of interest on the principal of a mortgage debt, resulted in a forfeiture. The reason for the decision is best understood from a consideration of this language in the opinion: " The stipulation of the plaintiff's agreement essentially differs, in its nature and object, from a provision in a mortgage to the effect that the principal sum shall become due on a specified default in the payment of interest as provided by it. In the latter case provision is so made for the time when the principal sum may become due, and that time is regulated by an event which may or may not occur so far as it is dependent upon the default of the mortgagor. The consequence so produced is not deemed a forfeiture. The result is maturity of the principal debt at the time, not definitely fixed, when the mortgage is made, but specifically stipulated for in that instrument. And in such case the court as a rule will not grant relief to the mortgagor from the effect of his default when nothing is done on the part of the mortgagee to render it unconscionable for him to avail himself of it. (*Noyes* v. *Clark*, 7 Paige, 179; *Mal-*

*colm* v. *Allen*, 49 N. Y. 448; *Bennett* v. *Stevenson*, 53 id. 508.) But the case at bar must be considered and determined in the light of the undisputed facts and circumstances under which the agreement was made, and in reference to the purpose represented by it."

The judgment of the Appellate Division and that of the Special Term should be reversed and judgment ordered in favor of plaintiff for the relief demanded in the complaint, with costs in all courts.

CARDOZO, Ch. J. (dissenting). The action is one for the foreclosure of a consolidated mortgage.

The principal of the mortgage is $335,000, payable in quarter-annual installments of $1,500, beginning April 1, 1925, and continuing until January 1, 1935, when there is to be payment of the residue ($276,500). Interest computed at the rate of 5¾% per annum is payable quarter-annually, like the installments of the principal. At the option of the mortgagee the whole of the principal is to become due after default for twenty days in the payment of any installment of the interest.

On July 1, 1927, there became due the quarterly installment of principal ($1,500), and interest ($4,621.56), in all $6,121.56. The interest payments were not constant in amount, for the debt on which interest was to be computed varied each quarter with the reduction of the principal. At this time, the owner of the equity of redemption was the Hope Building Corporation, which was not a signer of the bond nor personally bound for the payment of the debt. The corporation was owned and controlled by its president, Mr. Herstein, who sailed for Europe June 2, 1927, on a hurried trip for business. Before leaving he requested his bookkeeper, who was nominally the secretary of the corporation, to make out the checks for the principal and interest payable in July. Through an error in arithmetic, she computed the interest as $4,219.69, which was $401.87 short of the correct amount.

Mr. Herstein signed a check for the interest so computed and also one for $1,500, the installment of the principal. After he had gone, the bookkeeper recalculated the interest and discovered her mistake. There was no one authorized to sign checks when the president was away. Accordingly on June 24 she mailed the two checks to the plaintiff mortgagee, stating that a mistake in arithmetic had been made, and that the president was expected to return about July 5, at which time a check for $401.87 would be promptly forwarded. The president of the corporation returned at the appointed time, but unfortunately the bookkeeper forgot about the error, and failed to bring it to his attention. The twenty-day period of grace expired July 21. On July 22, without warning or demand, the plaintiff began this action for the foreclosure of its mortgage, electing to declare the principal indebtedness to be due by reason of the default in the payment of the interest. Promptly the same day, the corporation, thus advised of its default, tendered the overdue installment. The tender, being rejected, was kept good by payment into court. These facts being proved, the trial judge held that there had been a mere mistake in computation, against which equity would relieve by refusing to co-operate with the plaintiff in the effort to collect the accelerated debt. The Appellate Division unanimously affirmed. Upon appeal by the plaintiff the case is now here by allowance of this court.

There is no undeviating principle that equity shall enforce the covenants of a mortgage, unmoved by an appeal *ad misericordiam*, however urgent or affecting. The development of the jurisdiction of the chancery is lined with historic monuments that point another course. Equity declines to treat a mortgage upon realty as a conveyance subject to a condition, but views it as a lien irrespective of its form (*Trimm* v. *Marsh*, 54 N. Y. 599). Equity declines to give effect to a covenant, however formal, whereby in the making of a mortgage, the mort-

gagor abjures and surrenders the privilege of redemption (*Mooney* v. *Byrne*, 163 N. Y. 86, 93). Equity declines, in the same spirit, to give effect to a covenant, improvident in its terms, for the sale of an inheritance, but compels the buyer to exhibit an involuntary charity if he is found to have taken advantage of the necessities of the seller (Pomeroy, Equity Jurisprudence, vol. 2, § 953). Equity declines to give effect to a covenant for liquidated damages if it is so unconscionable in amount as to be equivalent in its substance to a provision for a penalty (*Kothe* v. *Taylor Trust*, 280 U. S. 224). One could give many illustrations of the traditional and unchallenged exercise of a like dispensing power. It runs through the whole rubric of accident and mistake. Equity follows the law, but not slavishly nor always (*Hedges* v. *Dixon County*, 150 U. S. 182, 192). If it did, there could never be occasion for the enforcement of equitable doctrine (13 Halsbury, Laws of England, p. 68).

To all this, acceleration clauses in mortgages do not constitute an exception. They are not a class by themselves, removed from interference by force of something peculiar in their internal constitution. In general, it is true, they will be enforced as they are written. In particular this has been held of a covenant in a mortgage accelerating the maturity of the principal in default of punctual payment of an installment of the interest. If the quality of a penalty inheres in such a covenant at all, it is not there to such a degree as to call, in ordinary circumstances, for mitigation or repression (*Noyes* v. *Clark*, 7 Paige, 179; *Ferris* v. *Ferris*, 28 Barb. 29; *Malcolm* v. *Allen*, 49 N. Y. 448; *Bennett* v. *Stevenson*, 53 N. Y. 508). Less favor has been shown to a provision for acceleration of a mortgage in default of punctual payment of taxes or assessments. We have held that such a provision, though not a penalty in a strict or proper sense, is yet so closely akin thereto in view of the forfeiture of credit that equity will relieve against it if default has been due to mere

venial inattention and if relief can be granted without damage to the lender (*Noyes* v. *Anderson*, 124 N. Y. 175; followed in *VerPlanck* v. *Godfrey*, 42 App. Div. 16; *Germania Life Ins. Co.* v. *Potter*, 124 App. Div. 814, and cf. *Trowbridge* v. *Malex Realty Corp.*, 198 App. Div. 656). In the one case as in the other, in foreclosure for default of taxes just as in foreclosure for default of interest, the privilege of acceleration is absolute in the event of a default, if the privilege is to be measured by the language of the covenant. The distinction lies in this only, that the punctual payment of interest has an importance to the lender as affecting his way of life, perhaps the very means for his support, whereas the importance of payment of the taxes is merely as an assurance of security. The difference is not one of kind, for the provision is enforcible even as to taxes if the default is continuous or willful; it is a difference merely of degree, the purpose of the payment being referred to as a test wherewith to gauge the measure of the hardship, the extent of the oppression.

There is neither purpose nor desire to impair the stability of the rule, which is still to be enforced as one of general application, that non-payment of interest will accelerate the debt if the mortgage so provides. The rule is well understood, and is fair to borrower and lender in its normal operation. Especially is it fair if there is a period of grace (in this case twenty days) whereby a reasonable leeway is afforded to inadvertence and improvidence. In such circumstances, with one period of grace established by the covenant, only the most appealing equity will justify a court in transcending the allotted period and substituting another. There is a difference, however, between a denial of power, without heed to the hardship calling for its use, and a definition of hardship that will limit the occasions upon which power shall be exercised. In none of the cases cited as indicative of lack of power was there any need to determine the effect

of accident or mistake apparent to a mortgagee who has preferred default to payment. Indeed, in the one case in which there was even an approach to such a theme, what was said was merely *obiter*, the actual decision being that the borrower was not at fault (*Noyes* v. *Clark, supra*). However fixed the general rule and the policy of preserving it, there may be extraordinary conditions in which the enforcement of such a clause according to the letter of the covenant will be disloyalty to the basic principles for which equity exists. We have seen that this may happen where the default is one affecting the payment of the taxes, though the standard form of mortgage, now embodied in the statute (Real Property Law, §§ 254, 258; Cons. Laws, ch. 50), groups interest and taxes together in the clause that makes provision for the acceleration of the principal. The courts of sister States at times have been less liberal than ours, and have held that even in respect of taxes the covenant will be enforced as it has been written, irrespective of the hardship (see, *e. g., Weiner* v. *Cullens*, 97 N. J. Eq. 523; *Derechinsky* v. *Epstein*, 98 N. J. Eq. 79; s. c., 99 N. J. Eq. 447). For us the rule is settled otherwise, and not even in the prevailing opinion is there the expression of a purpose to recede from it. Having gone so far, however, we shall have difficulty in refusing to go farther. Already, in the spirit of our holding, there are decisions by other courts that relief may be granted in extraordinary conditions, though the default has relation to the payment of the interest. Thus, in a recent case in Connecticut, acceleration of the debt was refused where a check for the interest had miscarried after its deposit in the mails (*Console* v. *Torchinsky*, 97 Conn. 353, 357). The exercise of a dispensing power was deemed to be a branch of the jurisdiction of equity to relieve against the consequences of accident or mistake. " This does not mean that such provisions for accelerating payments are provisions for forfeitures. Fairly made and fairly enforced they are not." Even so, " a court of equity may intervene to prevent the creditor from taking

an unconscionable advantage of the letter of his bargain " (BEACH, J., in *Console* v. *Torchinsky, supra;* cf. *Nove Holding Corp.* v. *Schechter,* 218 App. Div. 479).

When an advantage is unconscionable depends upon the circumstances. It is not unconscionable generally to insist that payment shall be made according to the letter of a contract. It may be unconscionable to insist upon adherence to the letter where the default is limited to a trifling balance, where the failure to pay the balance is the product of mistake, and where the mortgagee indicates by his conduct that he appreciates the mistake and has attempted by silence and inaction to turn it to his own advantage. The holder of this mortgage must have understood that he could have his money for the asking. His silence, followed, as it was, by immediate suit at the first available opportunity, brings conviction to the mind that he was avoiding any act that would spur the mortgagor to payment. What he did was almost as suggestive of that purpose as if he had kept out of the way in order to avoid a tender (*Noyes* v. *Clark, supra*). Demand was, indeed, unnecessary to bring the debt to maturity at law. There is not a technical estoppel (*Thompson* v. *Simpson,* 128 N. Y. 270, 291; Spencer Bower on Estoppel by Representation, pp. 61, 352, 358; cf. Williston, Contracts, vol. 3, §§ 1497, 1548, 1557). The consequence does not follow that, in conditions so peculiar, the omission to make demand is without significance in equity. Significant it may then be in helping the court to a determination whether the conduct of a suitor in taking advantage of a default, so easily averted and so plainly unintentional, is consistent with good conscience (cf. *Retan* v. *Clark,* 220 Mich. 493). True, indeed, it is that accident and mistake will often be inadequate to supply a basis for the granting or withholding of equitable remedies where the consequences to be corrected might have been avoided if the victim of the misfortune had ordered his affairs with reasonable diligence (*United States* v. *Ames,* 99 U. S. 35, 47; *Grymes* v. *Sanders,* 93 U. S. 55; *Noyes* v.

*Clark, supra*). The restriction, however, is not obdurate, for always the gravity of the fault must be compared with the gravity of the hardship (*Noyes* v. *Anderson, supra; Lawrence* v. *American Nat. Bank*, 54 N. Y. 432; *Ball* v. *Shepard*, 202 N. Y. 247, 253). Let the hardship be strong enough, and equity will find a way, though many a formula of inaction may seem to bar the path (*Griswold* v. *Hazard*, 141 U. S. 260, 284).

Cases such as *Klein* v. *New York Life Ins. Co.* (104 U. S. 88); *Wheeler* v. *Connecticut Mut. Life Ins. Co.* (82 N. Y. 543), and *Whiteside* v. *North American Acc. Ins. Co.* (200 N. Y. 320) do not derogate from the doctrine that a postulant in equity for affirmative relief may be dismissed without a remedy where he is attempting as an actor in the lawsuit to make himself the beneficiary of accident or error. In those cases and in others like them there was an attempt to charge a defendant with a contractual liability in disregard of the conditions limiting its creation. The party insisting on the condition was before the court as a defendant resisting a liability which could only arise if the condition was a nullity. Here, on the other hand, there is no endeavor by the owner of the property to charge the mortgagee with an obligation to do anything affirmative. The operation of the decree will be negative altogether. There is nothing more than a refusal to give active aid and countenance to one who seeks the aid of equity and is unwilling as a price to do equity himself (Pomeroy, Equity Jurisprudence, vol. 1, § 385; 13 Halsbury, Laws of England, p. 71; *Mickles* v. *Dillaye*, 17 N. Y. 80, 88; *Thomas* v. *Evans*, 105 N. Y. 601; *Satterlee* v. *Kobbe*, 173 N. Y. 91, 99; *Comstock* v. *Johnson*, 46 N. Y. 615; *Werner* v. *Tuch*, 127 N. Y. 217; *Thomas* v. *Brownville, etc., R. R. Co.*, 109 U. S. 522, 526; *Buchannon* v. *Upshaw*, 1 How. [U. S.] 56, 84; *Charleston, etc., Ry. Co.* v. *Hughes*, 105 Ga. 1, 21; cf. *Hulbert* v. *Clark*, 128 N. Y. 295). In equity as in mechanics action and reaction are equal and opposite. The equity that one asks one must be ready to concede. The maxim applies

" whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy " (Pomeroy, *supra*). The court will stand aside when by intervening it will make itself an instrument of injustice (*Thomas* v. *Brownville, etc., R. R. Co., supra*). There is no occasion to define the situations in which it will be ready to go farther and stay the remedy at law. Enough for present purposes that it may withhold a remedy in equity. If justice exacts an acceptance of a tender, the relief to be granted will be subject to that condition, and the decree will be limited to the overdue installments, with costs accruing to the date of tender and refusal.

In this case, the hardship is so flagrant, the misadventure so undoubted, the oppression so apparent, as to justify a holding that only through an acceptance of the tender will equity be done. The omission to pay in full had its origin in a clerical or arithmetical error that accompanied the act of payment, the very act to be performed. The error was not known to the debtor except in a constructive sense, for the secretary, a subordinate clerk, omitted to do her duty and report it to her principal. The deficiency, though not so small as to be negligible within the doctrine of *de minimis*, was still slight and unimportant when compared with the payment duly made. The possibility of bad faith is overcome by many circumstances, of which not the least is the one that instantly upon the discovery of the error, the deficiency was paid, and this only a single day after the term of grace was at an end. Finally, there is no pretense of damage or even inconvenience ensuing to the lender. On the contrary, and this is the vital point, the inference is inevitable that the lender appreciated the blunder and was unwilling to avert it. From his conduct on the day immediately succeeding the default, we can infer his state of mind as it existed the day before. When all these circumstances are viewed in their cumulative significance, the enforcement of the covenant according to its letter is seen to approach in hardship the oppression

of a penalty, just as truly as in *Noyes* v. *Anderson* there was unconscionable hardship in an insistence upon a default in the discharge of an assessment. Ninety-one per cent of the interest had been paid when it matured. The other nine per cent was paid as soon as the under-payment became known to an agent competent to act, and only a day too late. Equity declines to intervene at the instance of a suitor who after fostering the default would make the court his ally in an endeavor to turn it to his benefit.

The judgment should be affirmed with costs.

POUND, CRANE and HUBBS, JJ., concur with O'BRIEN, J.; CARDOZO, Ch. J., dissents in opinion in which LEHMAN and KELLOGG, JJ., concur.

Judgment accordingly.