DALE HOLDING CORP., Plaintiff, *v.* DALE GARDENS, INC., Defendant.

Supreme Court, Trial Term, Queens County, November 15, 1945.

*Albert DuPont* for plaintiff.

*Alexander Pfeiffer* for defendant.

C. A. JOHNSON, J. This is an action at law to recover the principal sum, with interest thereon, of consolidated bonds executed by the defendant in connection with two mortgages, also consolidated, covering real property in the county of Queens. The case was tried at Trial Term, a jury having been waived.

By the terms of the several obligations above mentioned it is provided that the whole of the principal sum " shall become due after default in the payment of any instalment of principal for twelve days or of interest for twelve days."

The plaintiff claims that the defendant has failed to comply with the terms and conditions of the bonds and mortgages by failing to pay within the twelve-day grace period an installment of principal and interest in the total sum of $750, which became due and payable on December 15, 1944, and that plaintiff has elected to declare the entire principal sum due.

Payments on account of the defendant's obligation were made by its managing agent, Farber-Wittman, Inc., and it appears that for a period of many months prior to December, 1944, such payments were made by check of that corporation mailed to the plaintiff on or about the fourteenth day of each month, and that such checks had been accepted without objection or question by the plaintiff.

On December 14, 1944, an employee of Farber-Wittman, Inc., mailed a check to the plaintiff in the sum of $750 in payment of the installment of principal and interest falling due on December 15, 1944. This check was improperly made payable not to Dale Holding Corporation, the plaintiff herein and the holder of the mortgage, but to Dale Gardens, Inc., the owner of the property. This error was not noticed by the plaintiff's bookkeeper who deposited the check to the plaintiff's account, but the error was discovered by the bank and the check was returned to the plaintiff's office. Under date of December 21, 1944, a letter was written by the plaintiff returning the check to Farber-Wittman, Inc. This letter was mailed on December 22, 1944, at Forest Hills, Queens County, but was not received by Farber-Wittman, Inc., at its office at 1034 Lexington Avenue, New York City, until December 26, 1944. On the same day a new and proper check was prepared and was mailed to the plaintiff from New York City on December 26, 1944, at 8:00 P.M., according to the postmark appearing on the envelope received in evidence.

There is a recognized rule that "Where, as here, a letter is mailed in the city of New York in the evening of a given day and it is to be delivered to another address in the same city, there is a well-recognized presumption that it will be delivered to the addressee on the following day." (*Struhl* v. *Travellers Insurance Co.*, 255 App. Div. 527, 529–530, affd. 281 N. Y. 584.) In this instance, however, it is established by the evidence, and were it not so established the court has good reason to recall, that during the holiday season of 1944 that is, for some two weeks before December 25th and for a week or ten days thereafter, the congestion of mail in the city of New York was so great that some delay was experienced in the delivery of mail of all sorts, including first-class mail. The letter mailed by Farber-Wittman, Inc., from New York City on December 26, 1944, at 8:00 P.M. was not delivered at the plaintiff's office in Jamaica until the morning of December 28, 1944. In the meantime the plaintiff's employees and officers made telephone calls and sent telegrams to Farber-Wittman, Inc., telling them that the check had not been received and, finally at 6:54 P.M. on

December 27, 1944, the last day of the grace period of twelve days, the plaintiff sent a telegram to Farber-Wittman, Inc., announcing its election to declare the entire principal sum due because of the failure of the plaintiff to receive its payment of principal and interest.

On the morning of December 28, 1944, an officer of Farber-Wittman, Inc., went to the plaintiff's office but was unable to see Robert L. Goetz, the president of the plaintiff corporation, in whose hands the decisions in this matter evidently rested. He testified that while there he talked to Beatrice Sclar, the book-keeper, and offered her a check and that she said she could not accept it; that he then offered cash which she also refused. He further testified (and this is also the testimony of the book-keeper) that while he was there the envelope (containing the check), which was mailed on December 26th, came in. The book-keeper says she did not open it but later returned it to the sender. This witness further testified that on the same day and prior to going to Goetz's office he had called Goetz and told him (Goetz) that the check had been mailed and Goetz replied " O.K. I will wait for the second mail ", and that subsequent to this conversation the witness went to Goetz's office. He spent most of the day there and at 4:30 P.M. Goetz called and said that he was in Connecticut and that Goetz said " Don't worry about it come in tomorrow and we will straighten it out." The next day, which was December 29th, the witness returned to the Goetz office and was told to wait until his (Goetz's) partner came in. After this he again made his offer in cash and this was refused. Thereafter this action was commenced.

Was there a default under the terms of the bond? I have reached the conclusion there was not, for the following reasons: (1) The defendant had the entire day of December 27, 1944, and until midnight of that day to make its payment. Prior to 8:00 o'clock in the evening of December 26, 1944, there was deposited in a post office in the city of New York a letter containing a check in the proper form and amount, addressed to the plaintiff. This method of payment had been in use almost continuously between the parties, and the defendant had every right to assume that the letter would be delivered in due course in the ordinary time and would reach the plaintiff before the expiration of the grace period.

(2) The check did in fact reach the plaintiff before the exercise of a valid election by the plaintiff to declare the principal sum of the mortgage due. Although no demand is necessary

to enable the mortgagee to exercise its election to declare the full amount due, it is clearly essential that there be some unequivocal act by the mortgagee manifesting such election. The full amount of the mortgage does not fall due simply because an installment is not paid within the grace period (Real Property Law, § 254, subd. 2, as amd. by L. 1917, ch. 682; *446 West 44th St., Inc.,* v. *Riverland Holding Corp.,* 267 App. Div. 135). Of course such election must be made after the default occurs, and that means in this instance that the election must be evidenced by some unequivocal act of the mortgagee done on or after December 28, 1944. The telegram dispatched on the afternoon of December 27, 1944, hereinbefore referred to, had no effect whatever, for at that time the grace period had not expired. There is no evidence that at the moment when the envelope containing the properly executed check was delivered to the plaintiff there had been any effectual election on the part of the plaintiff to declare the full amount due. As a matter of fact, no act evidencing such election had been done down to the moment when the defendant's representative made an offer to the plaintiff's president on the morning of December 29, 1944, to pay the obligation by cash. Until there was such an election the defendant had the right to make good its default (*446 West 44th St., Inc.,* v. *Riverland Holding Corp., supra*).

Were it necessary to consider the equitable defense asserted by the defendant, I should find that circumstances existed justifying the court in relieving the defendant of its default, if one existed. There is no question that it had become the custom between these parties for the monthly installment to be paid by check of the defendant's agent, and that such payments were usually made by mail. Such a payment was attempted in this instance by a check improperly executed. Although this check came into the plaintiff's hands on December 16th or December 17th, it was retained by the plaintiff and was not returned to the defendant until December 22d. The method of return was the same used by the defendant in the delivery of the check, i.e., the United States mail. Had a default actually developed, the plaintiff would have been as much responsible for it as the defendant. The facts with which we are confronted in this case make the doctrine of *Graf* v. *Hope Building Corp.* (254 N. Y. 1) decidedly inapplicable, not only with respect to the existence of excuse for a default, but on the question of election, which in the *Graf* case (*supra*) did not exist.

Judgment for the defendant on the merits, with costs. Proceed on notice accordingly.