ROCKAWAY PARK SERIES CORP., Plaintiff, *v.* HOLLIS AUTOMOTIVE CORPORATION et al., Defendants.

Supreme Court, Special Term, New York County, December 7, 1954.

*Stanley Nussbaum* for Hollis Automotive Corporation, defendant.

*Geist & Netter* for plaintiff.

GAVAGAN, J. This is a motion by the defendant for summary judgment pursuant to rule 113 of the Rules of Civil Practice. The verified complaint seeks to foreclose a purchase-money mortgage taken on February 26, 1951, by A. Joseph and Cecile A. Geist who conveyed to the defendant four buildings described as premises 249-251-253-255 West 68th Street, New York City. The Geists subsequently assigned the mortgage to the plaintiff, a close corporation owned and operated by the said Geists. The sale of the property was subject to existing violations filed against the buildings. The mortgage contained a clause providing that the whole principal sum shall become due and payable at the option of the mortgagee in the event of the mortgagor's failure to comply with the requirements of any department of government or to keep the premises in reasonably good repair (par. 14 of the mortgage). The complaint alleges the defendant's failure to comply with the order of the department of housing and buildings of the City of New York filed December 28, 1937, some fourteen years prior to the time of defendant's taking title. The bald fact stands clear that at the time of the service of the summons and verified complaint the violations had been removed by the defendant who gave written notice of that fact to the plaintiff some five days prior to the commencement of this action. The question presented is whether under these facts and circumstances a court of equity will permit the foreclosure of the mortgage in question. The plaintiff relies upon the principal of law enunciated in *Graf* v. *Hope Building Corp.* (254 N. Y. 1). In this writer's opinion, that case is distinguishable from the instant one. In the *Graf* case (*supra*) the mortgage provided that after a default for twenty days in the payment of any installment of interest the mortgage would become due and payable. No act of the mortgagee was required to be done to cause the mortgage to become due. The mere happening of the event, i.e., of nonpayment, accelerated the due date of the mortgage, whereas, in the instant case, the mortgage required some affirmative act on the part of the mortgagee before the acceleration of the mortgage debt was effected. The mortgagee was given the option to call for full payment and unless he exercised the same the mortgage would not become due. An overt act was required on the part of the mortgagee. He must, however, exercise it in good conscience and in fairness to the mortgagor; he may not await the passage of time and select the occasion when the violations are being removed or have been removed to declare the mortgage debt due and payable.

The defendant's situation is similar to an owner of a fee on condition subsequent, in that the mere breach of the condition does not of itself defeat or diminish the estate. It gives to the grantor the right to re-enter and take back the property and such act must take place before the title of the holder on condition is divested. Courts of equity frown upon the principle of forfeiture. As the keeper of the conscience of the king, equity will ameliorate the harshness of the full application of legal forfeiture, when, in a given case, justice demands such action. The violations urged as the basis for accelerating the payment of the mortgage debt were filed against the premises December 28, 1937, and were an encumbrance against the property at the time of the sale to the defendant. For several years thereafter, the plaintiff remained quiescent, taking no action whatever to require the removal of the encumbrance, during which period, with full knowledge of its existence, he accepted payments of principal and interest, and, not until the mortgagee's inspection of the premises on July 2, 1954, disclosing the progress of the work for its removal, did he act. On that date the letter of election was sent and there followed a series of conferences looking toward an extension agreement providing for increased interest and amortization payments. Upon the mortgagee's failure to obtain such extension agreement, this foreclosure action was begun, seven days after the actual removal of record of the violations.

Under such conditions should a court of equity aid a mortgagee seeking its " pound of flesh "? The query answers itself. To grant foreclosure would require equity to forsake benign principles rooted in moral and natural justice. A learned former justice of this court, Official Referee ISIDOR WASSERVOGEL, recently enunciated the true principles applicable to the facts and circumstances of the present case when he declared: " Whether conduct is unconscionable or oppressive depends upon the facts of each particular case. Generally, it is not unconscionable to insist that the terms of a contract be enforced. It may be unconscionable, however, to insist upon adherence to the letter of an agreement where a mortgagee indicates by his conduct or silence that his inaction may turn to his own advantage. All of the circumstances presented here, the delay by plaintiffs, the removal of the violations, the improvement of the property by defendants at a substantial cost, when viewed in their cumulative effect, indicate that the strict enforcement of the acceleration covenant would approach in hardship oppression similar to a penalty." (*Caspert* v. *Anderson Apts.*, 196

Misc. 555, 560.) Such language cogently applies to the present case. To permit foreclosure under these circumstances would be unconscionable and oppressive.

Accordingly, the motion for summary judgment is granted. The clerk is directed to enter judgment dismissing the complaint and canceling of record the *lis pendens* heretofore filed herein, with costs.

Settle order.