## FOURTH DEPARTMENT, MAY, 1960

### (May 5, 1960)

■ MAURICE R. BAY et al., Respondents, v. CURTIS M. BAY, Appellant, et al., Defendants.

APPEAL from an order of the Supreme Court at Special Term, entered July 29, 1959, in Ontario County, which granted a motion by plaintiffs for summary judgment pursuant to rule 113 of the Rules of Civil Practice in action to foreclose a mortgage on real property for nonpayment of taxes.

Order affirmed, without costs of this appeal to any party.

HALPERN, J. (dissenting). The mortgage involved in this case is not of the common garden variety, but is of a very unusual nature. The mortgage was given on November 23, 1957, by the defendant Curtis M. Bay to the plaintiffs Maurice R. Bay, the brother of the defendant, and George Arnold and Loraine

Pollok, the children of a deceased sister of the defendant. The mortgage was given as part of a family settlement. It appears that in 1957, the defendant's father, John M. Bay, decided to distribute his property during his lifetime. [He died in the Fall of 1959 during the pendency of this appeal.] On November 23, 1957 he conveyed the family farm, upon which he and his wife were then living, to the defendant upon the condition that the defendant would pay to his brother and the children of his deceased sister their equal shares of the net value of the farm, at the end of 10 years. (The grantor also retained a life estate in the residence upon the farm.) According to the uncontroverted affidavit of the defendant, his father valued the farm at $19,000 but deducted therefrom $8,500 for improvements which had been installed and paid for by the defendant, leaving a net value to be distributed of $10,500. Dividing this amount by three, the share of each branch of the family was $3,500. Accordingly, it was agreed that the defendant, as the grantee of the farm, would pay his brother and the children of his deceased sister $3,500 each. It was agreed that this would be done by his giving a mortgage in the amount of $7,000 to the others payable in 10 years, without interest. This is the mortgage which is the subject of the present foreclosure action.

At the time of the conveyance of the farm to the defendant, there were unpaid taxes in arrears for the years 1956 and 1957. During the year 1958, the defendant paid up the back taxes. However, the defendant failed to pay the current county taxes for the years 1958 and 1959 and the school taxes for the year 1958–1959. As the defendant explained in his affidavit, during the year 1958, he was required to expend large sums for the improvement of the farm and for the purchase of necessary equipment, in addition to paying the taxes in arrears, all of which improved the security of the mortgage. In January, 1959 the defendant suffered a stroke, as a result of which he incurred hospital and medical bills and he was not able to resume work until March 1, 1959.

On April 8, 1959 the plaintiffs served a notice by registered mail upon the defendant demanding the payment of all taxes in default within 30 days. The total amount of the taxes in default was $650.02. Shortly after the expiration of the 30 days, the plaintiffs commenced the present foreclosure action, alleging in the complaint that they elected to declare the entire principal sum of $7,000 immediately due and payable. The defendant interposed an answer on June 9, 1959, alleging that because of the "financial hardship" he had suffered, he had not been able to pay the taxes at the time they fell due, but he was "now ready, able and willing to pay said taxes" and praying "that he be permitted by the Court to cure the default and to continue the mortgage as it now exists".

The plaintiffs moved for summary judgment but prior to the adjourned return day of the motion, without awaiting the decision of the court, the defendant paid up all taxes in arrears. The payment was made on June 25, 1959, about one and one-half months after the expiration of 30 days from the date of the notice and demand. The Special Term, nevertheless, granted the motion for summary judgment. From the order entered upon the court's decision, this appeal has been taken.

The question presented is whether, under the circumstances of this case, the court was powerless to grant relief from the acceleration of the maturity of the mortgage debt. The question is put in this way because, if the court had any power to grant relief, it was improper to direct the entry of summary judgment; it was the duty of the court to set the case down for a full hearing to determine whether this was an appropriate case for the exercise of the court's power (cf. *Ferlazzo* v. *Riley,* 278 N. Y. 289). We are not called upon to say upon this appeal whether relief in equity should have been granted or not; the question is one solely of the existence of the power to grant relief.

I realize that my associates feel, as the Special Term also did, that *Graf* v. *Hope Bldg. Corp.* (254 N. Y. 1) is decisive against the defendant but, upon analysis, I think that it will be found that that very case sustains the existence of the power to grant relief in this case. A distinction was sharply drawn both in the majority opinion by Judge O'BRIEN and in the dissenting opinion of Chief Judge CARDOZO between an acceleration of maturity for nonpayment of an installment of principal or interest and an acceleration for nonpayment of taxes or assessments. The *Graf* case involved an acceleration for nonpayment of interest. The majority of the court held that a court of equity had no power to relieve from this type of acceleration in the absense of a showing of fraud, bad faith or unconscionable conduct on the part of the mortgagee. As the court pointed out, a clause authorizing acceleration for nonpayment of installments of interest or principal is part of the prescription of the terms of payment of the primary obligation. These terms are enforced as written, an election to accelerate in such a case being regarded, not as a forfeiture or penalty, but as simply fixing the date of maturity in accordance with the agreement of the parties. But a provision requiring the mortgagor to pay taxes stands upon a different footing from the obligation to pay the stipulated principal and interest to the mortgagee. It does not require the payment of anything to the mortgagee; it is a collateral undertaking, designed to protect the mortgagee against the impairment of his security by the accumulation of unpaid tax liens having priority over the mortgage lien. The clause authorizing acceleration for nonpayment of taxes is designed for the same ultimate purpose, namely, to deter the mortgagor from allowing the security to become impaired. With respect to such an acceleration clause, it is the settled law of this State, as the court recognized in the *Graf* case, that a court of equity has the power to grant relief if the default is cured and the security is restored unimpaired.

The majority and the minority opinions in the *Graf* case are in agreement in recognizing this distinction. Judge CARDOZO in his dissenting opinion says with respect to the acceleration for nonpayment of taxes (pp. 9–10): "We have held that such a provision, though not a penalty in a strict or proper sense, is yet so closely akin thereto in view of the forfeiture of credit that equity will relieve against it if the default has been due to mere venial inattention and if relief can be granted without damage to the lender (*Noyes* v. *Anderson,* 124 N. Y. 175; followed by *Ver Planck* v. *Godfrey,* 42 App. Div. 16; *Germania Life Ins. Co.* v. *Potter,* 124 App. Div. 814, and cf. *Trowbridge* v. *Malex Realty Corp.,* 198 App. Div. 656)." (See, also, *Shaw* v. *Wellman,* 59 Hun 447; *Pizer* v. *Herzig,* 120 App. Div. 102; *Rodler* v. *Pacht,* 204 App. Div. 890, revg. 118 Misc. 331; cf. *Loughery* v. *Catalano,* 117 Misc. 393, affd 207 App. Div. 895.)

Judge CARDOZO argued in vain in the *Graf* case that a similar rule should be adopted with regard to a default in the payment of an installment of principal or interest. This the majority declined to do but it did not differ with Judge CARDOZO's statement that equity has the power to relieve from an acceleration for nonpayment of taxes. Referring to *Noyes* v. *Anderson* (124 N. Y. 175) upon which Judge CARDOZO relied, Judge O'BRIEN, speaking for the majority, stressed the fact that that case involved a default in the payment of taxes and said that acceleration on that account " unlike a default in the payment of interest on the principal of a mortgage debt, resulted in a forfeiture " (p. 6). After noting that the rule with regard to relief from acceleration for nonpayment of taxes " is settled " in New York State, Judge CARDOZO commented: " [N]ot even in the prevailing opinion is there the expression of a purpose to recede from it " (p. 11).

The rationale of the distinction was stated by Judge CARDOZO as follows: "The distinction lies in this only, that the punctual payment of interest has an importance to the lender as affecting his way of life, perhaps the very means of his support, whereas the importance of payment of the taxes is merely as an assurance of security" (p. 10).

In a comprehensive note in 22 Columbia Law Review 266 on Equitable Relief from the Operation of Acceleration Clauses in Mortgages, the writer puts the rationale this way (p. 268): "In all the above cases [in which relief was granted], the stipulation not enforced concerned security. Their non-enforcement was due to the fact that the creditor was amply safeguarded without the need of subjecting the debtor to a forfeiture."

The distinction drawn in the earlier cases and reaffirmed in the *Graf* case has been repeatedly followed in the courts of this State (*York* v. *Hucko*, 146 Misc. 201; *Gaspert* v. *Anderson Apts.*, 196 Misc. 555, 557–558; *Herald Tribune Fresh Air Fund* v. *Robert Burns Residence Club*, N. Y. L. J., Dec. 1, 1953, p. 1283, col. 1 [PETTE, J., Queens County]; *Clark-Robinson Corp.* v. *Jet Enterprises*, 159 N. Y. S. 2d 214, 216; *Rockaway Park Series Corp.*, v. *Hollis Automotive Corp.*, 206 Misc. 955, affd. 285 App. Div. 1140; *Domus Realty Corp.* v. *3440 Realty Co.*, 179 Misc. 749, affd. 266 App. Div. 725; see, also, 2 Pomeroy, Equity Jurisprudence [5th ed.], § 439, pp. 220-221).

Of course, even in the case of an acceleration for nonpayment of taxes, a court of equity will not grant relief if the default was "continuous or willful", in Judge CARDOZO's phrase (254 N. Y. 1, 10). This, I believe, is the true basis of the decision of the Appellate Division of the First Department in *Armstrong* v. *Rogdon Holding Corp.* (234 App. Div. 854 [without opinion], motion for leave to appeal denied by the Court of Appeals on May 3, 1932 [unreported]), as shown by the record and briefs on appeal. In the *Armstrong* case, there was an express finding by the trial court that the defendant's default was "intentional, deliberate, continuous and willful and [showed] that the defendant preferred default to payment" (Record on Appeal, fol. 75). This finding was affirmed by the Appellate Division. The opinion of the trial court in the *Armstrong* case (139 Misc. 549) contains a dictum directly at variance with the distinction drawn in the *Graf* case and the other cases cited above and we may assume that it was not approved by the Appellate Division, in affirming the decision without opinion. Incidentally, it may be noted that the dictum in the trial court's opinion in the *Armstrong* case is the only statement by any court of this State, subsequent to the decision of the *Graf* case, which refuses to follow the distinction there made between defaults in payment of principal or interest and defaults in payment of taxes.

The generally understood rule was recently summarized by Justice PETTE in the Special Term decision cited *supra*, as follows: "Provisions for acceleration of principal upon default in payment of interest have, it is true, been strictly enforced [citing cases]. Such, however, has not been the case with respect to defaults in the payment of taxes or assessments [citing cases]. It seems abundantly clear from the cases just cited that equity will not enforce a provision for acceleration of principal upon default in the payment of taxes unless it be shown that the default was either willful or continuous" (*Herald Tribune Fresh Air Fund* v. *Robert Burns Residence Club*, N. Y. L. J., Dec. 1, 1953, p. 1283, col. 1).

It thus appears that even if the mortgage involved in this case were a mortgage given in an ordinary commercial transaction, a court of equity would not be powerless to relieve from the acceleration. However, as the statement of facts at the beginning of this opinion demonstrates, the mortgage in this case was not an ordinary commercial mortgage. It was a most extraordinary

mortgage, given in a family settlement, payable in 10 years without interest. While a plausible argument can be made that the acceleration of the maturity of an interest bearing mortgage for any cause, including the nonpayment of taxes, does not work a true forfeiture, no such argument can be made with respect to a noninterest bearing mortgage. The mortgagor who is compelled to pay an interest bearing mortgage upon an earlier date is relieved of a counter-balancing obligation to pay interest to the original date of maturity. Assuming that the rate of interest provided in the mortgage is the same as that currently prevailing, the mortgagor suffers no loss by reason of the acceleration, aside from the cost of refinancing the mortgage. If the current interest rate is higher, there may be some financial loss but it is not comparable to the complete forfeiture of a noninterest bearing term of credit which is involved in the acceleration of the maturity of a noninterest bearing mortgage (cf. A-Z *Servicenter*, v. *Segall*, 334 Mass. 672).

What Judge CARDOZO characterized as "closely akin" to a forfeiture in an acceleration for nonpayment of taxes in the case of an interest bearing mortgage becomes an actual forfeiture in the case of a noninterest bearing mortgage.

A few computations will demonstrate the extent of the true forfeiture involved in the acceleration of a noninterest bearing mortgage. According to the standard tables, the present value of an obligation to pay $7,000 10 years hence, without interest, is only $3,906 (computed upon the basis of an interest rate of 6% compounded annually). If the maturity of such a mortgage were accelerated immediately after it was given, the mortgagor would be required to pay $7,000 at once for an obligation which had a present value of about $3,900, thereby forfeiting the sum of $3,100. Conversely, the mortgagee would receive at once the sum of $7,000, instead of its present value, $3,900. If he invested this at 6% interest compounded annually, he would have at the end of the 10-year period the sum of $12,535, instead of the $7,000 stipulated in the mortgage. Looking at the case in another way, the mortgagor would be required to pay the sum of $7,000 at once instead of at the end of 10 years and, if he borrowed this sum in order to make the payment, he would have to pay interest on it for 10 years. At 6%, this would amount to $4,200, spread over a 10-year period. The present value of this sum would be over $3,300.

In view of the noninterest bearing nature of the mortgage, the invoking of the acceleration clause for nonpayment of taxes necessarily operated as a forfeiture or penalty. The situation is the same as if an express provision had been inserted in the mortgage that, upon a default in payment of taxes, the mortgagor would be required to pay to the mortgagee an additional sum of over $3,000, not because any such loss would be caused to the mortgagee by the default but because the existence of the provision would serve to deter the mortgagor from allowing a default to occur. If, in such a case, the default was made good and no loss was suffered by the mortgagee, a court of equity would certainly relieve from the forfeiture of the additional sum (2 Pomeroy, Equity Jurisprudence [5th ed.], § 436; cf. *884 West End Ave. Corp.* v. *Pearlman*, 201 App. Div. 12, affd. 234 N. Y. 589.)

Going back to the family settlement aspect of the case, the case may readily and fairly be stated in terms of a grant on condition subsequent with an attempted forfeiture for breach of the condition. In effect, the defendant's father, in addition to giving the defendant the equity in the farm, gave him the right to use $7,000, the share of the other children, for a period of 10 years without interest. This amounted to a gift to the defendant by his father of the income upon a fund of $7,000 for 10 years. This gift was subject to the condition subsequent that the right to the use of the fund might be terminated if the defendant failed to maintain unimpaired the security of the lien of the

mortgage which he had given to assure the turning over of the $7,000 to his brother and niece and nephew at the end of the 10-year period. The condition was one calling for the payment of money only, namely, the payment of the current taxes to protect the security against impairment. The acceleration of the mortgage for nonpayment of the taxes was, in effect, an attempt to forfeit the 10-year estate in the $7,000 fund on account of the breach of this condition. It is well settled that a court of equity has power to grant relief from the forfeiture of an estate for breach of a condition subsequent requiring only the payment of money, if the breach is rectified and no loss is suffered. The forfeiture clause is " treated as a mere security" for the payment of the money and if the payment is made, even though it may be made late, equity will relieve from the forfeiture. (3 Story, Equity Jurisprudence [14th ed.], § 1734.) This is substantially the situation here presented. The defendant's estate in the $7,000 fund for 10 years has been declared forfeit because of the failure to pay promptly taxes in the amount of $650. The defendant has made good the default and no impairment of security has been suffered by the persons to whom the fund is ultimately to be paid. This brings the case squarely within the doctrine authorizing equitable relief from a forfeiture for breach of a condition subsequent.

The leading case is *Giles* v. *Austin* (62 N. Y. 486). In that case, an action was brought to enforce a forfeiture of the unexpired term of a leasehold because of the nonpayment of taxes and assessments. The lessee thereafter paid the taxes and commenced an action in equity to enjoin prosecution of the ejectment suit. The court granted the relief, saying: " [W]here the covenant is simply for the payment of money, the forfeiture is regarded as a security merely for such payment, and equity will not allow it to be enforced after the party has obtained all that it was intended to secure to him" (p. 493). (See, also, 2 Pomeroy, Equity Jurisprudence [5th ed.], § 454-a.)

In *Noyes* v. *Anderson* (124 N. Y. 175, *supra*) an acceleration of the maturity of a mortgage because of the nonpayment of taxes, under circumstances very similar to those in the present case, was explicitly characterized as a forfeiture for breach of a condition subsequent and relief from the acceleration was granted. This holding in the *Noyes* case was specifically approved by the majority of the court in the *Graf* case (254 N. Y. 1, 6).

To sum up, I believe that the court had the power to relieve from the acceleration of the maturity of the mortgage in this case for three reasons: (1) it is the settled law of this State that equity may relieve from an acceleration for a default in the payments of taxes, in breach of the mortgagor's collateral undertaking to protect the mortgagee's security, as distinguished from an acceleration for a default in the payment of principal or interest upon the primary obligation; (2) the mortgage was a noninterest bearing mortgage and therefore the acceleration constituted a true forfeiture of a noninterest bearing term of credit; (3) the acceleration amounted to a forfeiture of a 10-year estate in a $7,000 fund because of breach of a condition subsequent relating to the payment of money. The acceleration in this case fell directly within the traditional power of equity to relieve from a forfeiture.

The order appealed from should be reversed and the motion for summary judgment denied.

All concur, except Halpern, J., who dissents and votes for reversal and denial of the motion in an opinion. Present — Williams, P. J., Bastow, Goldman and Halpern, JJ.

Order affirmed, without costs of this appeal to any party.