Kahn & Hochberg, New York City, for Creighton Moeller, Susan Moeller and Just Chocolates, Inc.

Kron Chocolatier, Inc., by Enrique Foster Gittes, New York City, for debtor.

**In re KRON CHOCOLATIER, INC., Debtor.**

**Bankruptcy No. 83 B 11188 (PBA).**

United States Bankruptcy Court, S.D. New York.

Oct. 10, 1985.

## MEMORANDUM DECISION

PRUDENCE B. ABRAM, Bankruptcy Judge:

Creighton Moeller ("Creighton"), Susan Moeller and Just Chocolates, Inc. (collectively "Moeller") have sought, based upon an affidavit of Creighton sworn to June 5, 1985, to have this court enter a judgment in favor of Moeller in the amount of $333,-333.32, together with interest and costs. This request, which has been opposed by the now-reorganized debtor, Kron Chocolatier, Inc. ("Kron"), is based upon the provisions of a settlement agreement among Moeller, Kron and certain others who are not pertinent to the present matter. The settlement agreement dated June 7, 1984 (the "Settlement Agreement") was approved by this court on July 30, 1984 and settled what had been a lengthy and bitter series of litigations that had began in late 1982, before Kron's Chapter 11 was filed on August 12, 1983 and had continued during the Chapter 11 case, even after Kron's acquisition by its present shareholders in late 1983. Moeller, prior to approval of the Settlement Agreement, had been a Kron franchisee. The litigations involved, *inter alia*, charges by Moeller that Kron failed to supply merchandise and countercharges

by Kron that Moeller was selling products not purchased from Kron in violation of the franchise agreement. The approval of the Settlement Agreement, which included rejection of the Moeller franchise agreement by Kron, removed a major impediment to a plan of reorganization. Subsequently, and on November 19, 1984, the Debtor's plan of reorganization was confirmed.

The Settlement Agreement required payment by Kron to Moeller as damages for all Moeller claims, including those arising out of rejection of the franchise agreement (the "Reduced Damage Claim") of a total of $515,000, of which $165,000 was to be paid two days after confirmation and the balance of $350,000, in 84 equal monthly installments of $4,166.67 each. Moeller asserts, and Kron has admitted, that in May 1985, Kron tendered the May payment of $4,166.67 by check dated May 16, and mailed on May 17. On May 16, Moeller had sent to Kron by certified mail a notice of election to accelerate the payment of all unpaid amounts. Thereafter by letter dated May 20 Moeller returned the May check to Kron, and likewise returned the June check that was subsequently tendered.

Paragraph 1.3 of the Settlement Agreement provides that the monthly payment is to be made on the first of the month. In addition, it is provided that

"Timely payment of the Reduced Damage Claim pursuant to the terms of this Stipulation is the essence of this Stipulation."

The Settlement Agreement further provides

"8.1 *Debtor's Breaches and the Moellers', Just Chocolates', Whaley's and La Belle's Remedies.*

"(a) In the event that the Debtor shall fail to make any payment in respect of the Reduced Damage Claim as required by Section 1.3 hereof within fifteen (15) days after the due date thereof or if the Debtor otherwise fails to perform any of its material obligations under this Stipulation, then at the election of the Moellers and Just Chocolates (which election shall be made at any time upon ten (10) days' written notice thereof to the Debtor), all amounts then remaining unpaid by the Debtor in respect of the Reduced Damage Claim shall become immediately due and payable.

"(b) The remedy of the Moellers and Just Chocolates described above for a breach by the Debtor of its obligations under this Stipulation shall be the Moellers', Just Chocolates, Whaley's and La Belle's sole remedy and the Moellers, Just Chocolates, Whaley and La Belle each hereby waive all other remedies available at law or in equity for the Debtor's failure to perform this Stipulation, provided, however, that if the Debtor fails to pay any final judgment of this Court or proper appellate court (within two (2) days after entry thereof) which finds the Debtor liable in respect of amounts owing to the Moellers and Just Chocolates as a result of the Moellers' and Just Chocolates' election under subparagraph (a) above, then the Moellers and Just Chocolates shall have the right to terminate this Stipulation as against all parties hereto and to enforce any such final judgment."

Kron, which as previously stated does not contest the fact that the May payment was made late, takes the position that its default was a technical one only and caused by office problems. Apparently Kron's practice had been to mail the monthly check to Moeller on the 15th of each month, the last day of the grace period. It is uncontroverted that in April 1985, Creighton warned Mr. Enrique Foster Gittes, the dominant shareholder of Kron, that the payments were being received after the due date. The present default occurred the following month.[1]

---

1. Whether a check mailed within the grace period, but received after it, is timely need not be decided by this court. The court is likewise not concerned with whether any legal distinction exists between mailing the check on the last day so that it cannot be received within the grace period and mailing it several days earlier when it could, at least theoretically, be received within the grace period. In May the check was

Kron has also asserted that Moeller has breached certain representations and warranties of the Settlement Agreement relating to packaging and trade indicia and the alleged making of certain statements. These charges have been followed by letters to the court from Creighton alleging that Kron has hired his former partner to run its stores and is now utilizing certain Moeller molds. These charges and countercharges are not material to the acceleration issue.

The Settlement Agreement is neither unfair nor overreaching in providing for acceleration in the event payments are not made within the 15-day grace period. Timely payments were agreed to be of the essence. See 22 N.Y.Jur.2d, Contracts §§ 247–250. Moeller gave up his right to institute suit for collection of an unpaid installment. Moeller was left with a right of acceleration. The limitation of Moeller to acceleration remedy was a bargained-for term that had the effect of preventing further lawsuits by Moeller, a much desired objective given the acrimony of the litigations. See ¶ 8.1 quoted *supra*. Moreover, the covenant to pay on the first of the month, with fifteen grace days, was a simple one for Kron to comply with, particularly as nothing precluded payment prior to the first of the month.

Covenants such as the payment and acceleration ones on which Moeller relies on are enforceable in New York. The New York Court of Appeals in *Graf v. Hope Building Corporation*, 254 N.Y. 1, 171 N.E. 884 (1930), has stated in similar circumstances:

"Defendant's mishap, caused by a succession of its errors and negligent omissions, is not of the nature requiring relief from its default. Rejection by plaintiff's legal right could rest only on compassion for defendant's negligence. Such a tender emotion must be exerted, if at all, by the parties rather than the court. Our guide must be the precedents prevailing since courts of equity were established in this State. Stability of contract

executed, mailed and received outside the grace

obligations must not be undermined by judicial sympathy." 254 N.Y. at 4, 171 N.E. 884.

It appears that Kron had been playing brinksmanship for a number of months by waiting until the last day of the grace period to mail the check. Kron had been warned about its straddling of the line of untimeliness. Compare Judge Cardozo's dissent in *Graf* ("It may be unconscionable to insist upon adherence to the letter where the default is limited to a trifling balance, where the failure to pay the balance is the product of mistake, and where the mortgagee indicates by his conduct that he appreciates the mistake and has attempted by silence and inaction to turn it to his own advantage. * * * His silence, followed, as it was, by immediate suit at the first available opportunity, brings conviction to the mind that he was avoiding any act that would spur mortgagor to payment." 254 N.Y. at 12, 171 N.E. 884. This court fails to find waiver, estoppel, bad faith, fraud, oppressive or unconscionable conduct such as might warrant declining to lend the court's aid to enforcement of the acceleration provision of the Settlement Agreement. See, e.g., *Ferlazzo v. Riley*, 278 N.Y. 289, 16 N.E.2d 286 (1938); *Domas Realty Corporation*, 179 Misc. 749, 40 N.Y.S.2d 69 (1943). Given the reluctance of the New York courts to decline to enforce an acceleration clause in a fully secured mortgage, this court must be equally reluctant to decline enforcement of an acceleration provision relative to an unsecured obligation.

Kron and Moeller are competitors. In rejecting Moeller's franchise, Kron acquired the right to exploit the valuable New York City territory. If Kron's default and Moeller's election to accelerate affects the competitive balance between them, that is merely result of a contract freely entered into. Compare *Schoemaker v. Meadows*, 170 Misc. 158, 10 N.Y.S.2d 850, 852 (1939) ("It is, after all, only the rule that the contracting party places upon himself when he fixes such time limit, and he

period.

should not, of course, complain if it cause him hardship later on."). The former shareholder of Kron was paid $700,000 in cash pursuant to a court approved transaction for his stock during the Chapter 11 case. Under the terms of the plan of reorganization, the holders of franchise claims other than Moeller received 100% cash on confirmation on their allowed claims. General unsecured creditors received 99% cash on confirmation on their allowed claims. The accelerated obligation of $333,333.32 is only half the amount paid to the former shareholder.

Submit appropriate order for judgment.