In the Matter of FEIST & FEIST, by JOHN A. FEIST, as Agent of Roosevelt Nassau Operating Corporation, Respondent, *v.* LONG ISLAND STUDIOS, INC., et al., Appellants.

Second Department, February 5, 1968.

*Goldstein, Judd & Gurfein (Murray I. Gurfein, Morris A. Wirth* and *Charles H. Kellert* of counsel), for appellants.

*English, Cianciulli & Reisman (David H. Peirez* and *Lewis S. Meltzer* of counsel), for respondent.

MUNDER, J. This is a summary proceeding by a landlord to recover possession of real property. The trial court awarded judgment to the landlord and the Appellate Term affirmed.

The tenant had occupied three hangars on Old Country Road, in the former Roosevelt Field, near Mineola, under a 25-year lease which restricted use of the premises " solely for a general services motion picture studio ". By another provision of the lease the tenant was permitted to make alterations but not in excess of $10,000 in cost without the landlord's consent in writing.

. As to violations of its provisions, paragraph (4) of subdivision (a) of article 19 of the lease reads, in part: " 19. (a) Each of the following events shall be a default hereunder by Tenant and a breach of the lease: * * * (4) If tenant shall fail to perform any of the other agreements, terms, covenants or conditions hereof on Tenant's part to be performed and such non-performance shall continue for a period of thirty (30) days after notice thereof by Landlord to Tenant or, if such performance cannot be reasonably had within such thirty-day period, Tenant shall not in good faith have commenced such performance within such thirty-day period and shall not diligently proceed therewith to completion."

Asserting that the tenant violated both the use restriction and the provision as to alterations, the landlord had such 30-day notice served upon the tenant. When the tenant failed to comply with the notice, neither desisting from the violation of the use restriction nor restoring or at least showing good faith by starting to restore the premises, the landlord exercised its option to declare the lease terminated and recover possession of the premises by this summary proceeding. The cancellation clause, paragraph (1) of subdivision (b) of article 19 of the lease reads:

" (b) In the event of any such default: (1) Landlord shall have the right to cancel and terminate this lease, as well as all of the right, title and interest of Tenant hereunder, by giving to Tenant not less than five (5) days' notice of such cancellation and termination, and upon the expiration of the time fixed in such notice this lease and the terms hereof, as well as all of the right, title and interest of Tenant hereunder, shall expire in the same manner and with the same force and effect, except as to Tenant's liability, as if the expiration of the time fixed

in such notice of cancellation and termination were the end of the term herein originally demised.''

Before the tenant had made any radical departure from the lease, the landlord sent the following letter:

"February 24, 1966

Mr. Michael Myerberg
234 West 44th Street
New York, New York

Re: Long Island Studios
Roosevelt Field
Garden City, New York

Dear Mr. Myerberg:

We note from the press that you are apparently planning to use part of your studios on Old Country Road as a cabaret or discotheque type facility, open to the general public.

Since you will probably be making a formal request for our Board's permission to use the premises for this purpose, will you please let us know when you plan to make the request so that we can plan to include it on the Board's agenda at a meeting in the near future.

Sincerely,
ROOSEVELT NASSAU OPERATING CORP.
John A. Feist
Managing Director

JAF:dp ''

No response was made to the letter and no request was made for a lease modification. Instead the tenant proceeded to remodel one of the hangars, expending, as the trial court found, much more than the authorized limit of $10,000, and opened a discotheque type of facility to the general public for an admission fee of $2.50 per person.

Our colleague, Mr. Justice HOPKINS, in his dissent, does not dispute that these were violations of the terms of the lease. It is his view that forfeiture is not a proper remedy for the landlord, that the use restriction is not to be treated as a covenant or a conditional limitation and that, with the law abhorring forfeitures, only injunctive relief may be had by the landlord.

The terms '' condition '', '' conditional limitation '' and '' covenants '' used in connection with leases are given subtle and conflicting distinctions in decisional law. Rasch in his treatise '' The New York Law of Landlord and Tenant and Summary Proceedings '' defines each of these terms (vol. 1, §§ 667, 669, 685). He says that a breach of a covenant is the subject of

injunctive relief (§ 668), that on the breach of a condition the landlord has the option to declare the lease at an end or to waive forfeiture (§ 679) and that the happening of the subject of a conditional limitation automatically terminates the lease (§ 686).

In the instant case the tenant violated two material conditions of the lease. The landlord sought to have these violations corrected by service of a 30-day default notice. On the tenant's noncompliance with that notice, although the alternate remedy of injunction was available to the landlord (*Lyon* v. *Bethlehem Eng. Corp.*, 253 N. Y. 111), the latter elected, as was its right, to terminate the lease. This was accomplished by the service of the five-day notice pursuant to paragraph (1) of subdivision (b) of article 19 of the lease. Upon the lapse of the time fixed in the notice, the term of the lease expired and summary relief was available to the landlord.

The violations were deliberately and consciously created, without required permission and indeed despite the landlord's written suggestion that authorization be solicited. In these circumstances there is no estoppel against the landlord's exercise of its full remedy, however harsh that may appear to be. Equity in such case follows the law.

The order of the Appellate Term should be affirmed, with costs.

HOPKINS, J. (dissenting). A predecessor in interest to Roosevelt Nassau Operating Corporation (hereinafter called "landlord") entered into a lease with Long Island Studios, Inc. (hereinafter called "tenant") covering 10 acres of land, on which three aeroplane hangars were located, for a term of 25 years beginning in 1963. The lease provided that the premises were to be used "solely for a general services motion picture studio". The tenant invested between $650,000 and $700,000 in the premises and several well-known and full-length motion pictures were filmed there. Television productions were also taped at the studios by the tenant.

In 1966 this summary proceeding was commenced. The landlord claimed the forfeiture of the lease on the dual grounds of a breach of the use provision and of a breach of a provision requiring prior approval of alterations in excess of a cost of $10,000. Finding a breach of each of these provisions, the District Court of Nassau County granted judgment for the landlord; and the Appellate Term affirmed. We granted leave to appeal to the tenant.

The definition of "a general services motion picture studio" in a lease of 25 years' duration necessarily takes color and form as technological advances are made in the art. Both the

theory and practice of cinema making have changed radically in the past 25 years and it is hardly an exercise of conjecture to look forward to other changes in the industry within the period of the lease. Following the shift in the techniques of the novel, the emphasis in motion pictures has been transferred from narrative to impression; and, of course, the making of television shorts has become an integral part of the industry.

After the use of the premises conforming to the lease, the tenant combined audience participation, television and the multiplication of light and sound to create a kind of discotheque operation of a mixed media character, in which an admission charge was made to those participating. It may well be that the tenant is a pioneer in the experiment of assembling the sensations of sight, hearing and motion into one continuous experience and that the experiment will in time become an accepted mode of the cinematic art.

But the trial court found that the tenant's operation did not fall within the use provision of the lease and I cannot say that the finding was not supported by the evidence. At least, it was a question of fact; and the relative novelty of the technique, the admission charge and the zoning exception required were all bases for the finding of noncompliance. Nevertheless, I do not think that the fact of noncompliance justifies the forfeiture of the lease under its provisions.

The lease provides that " [i]n the event of a breach  *  *  * by Tenant of any of the agreements, terms, covenants or conditions hereof, upon notice to Tenant, Landlord shall have the right of injunction to restrain the same and the right to invoke any remedy allowed by law or in equity, as if specific remedies, indemnity or reimbursement were not herein provided " (art. 21, subd. [a]); that a default shall be considered to occur when the " tenant shall fail to perform any of the other agreements, terms, covenants or conditions hereof on Tenant's part to be performed " for a period of 30 days after notice by the landlord (art. 19, subd. [a], par. [4]); and that, in the event of such a default, the lease may be cancelled on five days' notice, after which summary proceedings may be instituted (art. 19, subd. [b], par. [1]). The first of the quoted clauses limits the landlord's remedies to a plenary action and the latter of these clauses significantly limits the landlord's right to use summary proceedings to the eventuality of a failure of performance.

The restriction on the use of the premises is not to be treated as a conditional limitation or as a covenant (1 Rasch, N. Y. Law of Landlord and Tenant and Summary Proceedings, § 692).

The tenant made no promise as to its use of the premises; the lease was a grant of the premises conditioned on its use for a stated purpose; and the language will not be extended by implication (*King Drug Stores* v. *Ramsgate Realty Co.*, 152 Misc. 41, affd. 241 App. Div. 806). The violation of the restriction is put to an end by injunctive relief against the tenant (*Lyon* v. *Bethlehem Eng. Corp.*, 253 N.Y. 111). The clause defining default does not include language imposing a duty upon the tenant to '' observe '' or to '' keep '' a provision, as do the leases in those cases in which the tenant was held responsible for the breach of a negative condition (cf. *West Shore R. R. Co.* v. *Wenner*, 70 N. J. L. 233; *Croft* v. *Lumley*, [1858] 6 H. L. Cas. 672).

The difference in language is not needlessly esoteric, for the landlord is insisting on forfeiture. Forfeiture is not favored (*Lyon* v. *Hersey*, 103 N. Y. 264, 270; *Schnitzer* v. *Fruehauf Trailer Co.*, 283 App. Div. 421, affd. 307 N. Y. 876). Here the tenant stands to lose a long-term lease and the value of its investment as the result of a short lived operation not too remote in character from the use permitted. An injunction against the use would have served the landlord as well and not deprived the tenant of its property. We should therefore not hesitate to hold the landlord within the strict terms of its bargain. That, indeed, is the benevolent view of the law (cf. *Janks* v. *Central City Roofing Co.*, 271 App. Div. 545; *Ogden* v. *Hamer*, 268 App. Div. 751; *Granet Constr. Corp.* v. *Longo*, 42 Misc 2d 798; 5 Williston, Contracts [3d ed.], § 806, pp. 859–860).

The lease must be construed as a whole to reflect the intentions of the parties (*Bovin* v. *Galitzka*, 250 N. Y. 228, 232). One clause should not be elevated beyond the others so that obvious injustice results. When a lessee in good faith believes that the demised premises may be used consonant with the terms of the lease, his error in judgment may be better corrected by injunction without undue harm to either party rather than by the extreme penalty of termination of the lease and his consequent ouster. Viewed in its totality under the circumstances of the case, the lease should not be so construed as to require the lessee's loss of its investment and the value of the remaining years of the lease.

The breach of the clause forbidding alterations in excess of a cost of $10,000 except by approval of the landlord does, however, pertain to an affirmative act of the tenant which would be equivalent to a failure of performance. But I do not believe that the evidence supports the finding of a breach by the tenant.

The record indicates knowledge by the landlord of the alterations by the tenant, without protest; and it is significant that no action was taken by the landlord to terminate the lease until after the new operation by the tenant had been commenced. In this posture, the landlord was estopped from terminating the lease on the ground of a breach (*City Bank Farmers Trust Co.* v. *Short,* 203 Misc. 979, affd. 283 App. Div. 779; *Ireland* v. *Nichols,* 46 N. Y. 413, 416).

For all of these reasons, I am of the opinion that the harsh remedy of summary proceedings was not available to the landlord.

BELDOCK, P. J., CHRIST and BRENNAN, JJ., concur with MUNDER, J.; HOPKINS, J., dissents, with opinion.

Order of the Appellate Term, Second Judicial Department, dated March 3, 1967, affirmed, with costs.