BRAINERD MANUFACTURING Co., Appellant, v DEWEY GAR-
DEN LANES, INC., et al., Respondents.

Fourth Department, January 23, 1981

#### APPEARANCES OF COUNSEL

*Woods, Oviatt, Gilman, Sturman & Clarke (Samuel P.
Merlo* of counsel), for appellant.

*Lines, Wilkens, Osborn & Beck (Emanuel B. Halper* of
counsel), for respondents.

#### OPINION OF THE COURT

HANCOCK, JR., J.

The issue on appeal is whether the circumstances sur-
rounding the landlord's cancellation of a long-term com-
mercial lease because of the tenant's breach of certain terms
thereof warrant equitable intervention. Petitioner, the land-
lord under a 20-year lease of premises to respondent Dewey
Garden Lanes, Inc., for use as a bowling center, appeals
from an order of Monroe County Court which reversed a
judgment of the Town Court of Greece after a trial award-
ing possession to the landlord. The lease, for a term from
January 1, 1961 to May 31, 1981, with two 10-year renewal
options, included a provision that the tenant maintain fire

insurance on the premises in the names of the landlord and tenant "in such minimum amount as shall at all times and in all events be sufficient to replace any and all loss or damage by fire or other hazards and peril encompassed in extended coverage." The tenant also agreed to furnish to the landlord every two years an insurance company appraisal and to maintain certain portions of the premises including the parking lot in "good order and repair." Under the terms of the lease, if the tenant defaulted in fulfilling any of the covenants of the lease and failed to remedy such default within 10 days after written notice from the landlord or failed to proceed expeditiously and continuously to do so, the landlord could give the tenant written notice specifying a day not less than 10 days thereafter upon which the term of the lease would expire.

On June 1, 1978 the landlord gave the tenant written notice of its default under the lease in failing to procure an insurance company appraisal every two years, to provide replacement cost insurance, and to maintain certain portions of the premises. The tenant's only response was to notify the landlord on June 8, 1978 that it was undertaking a review of all of its properties with a view to adjusting the insurance coverage where necessary. It ignored the landlord's requests concerning the insurance appraisal and the repairs and did not increase the insurance coverage until after commencement of this proceeding.

The landlord notified the tenant on July 24, 1978 that inasmuch as the tenant had "neither cured the defects specified nor proceeded expeditiously to do so", the lease agreement would expire on August 14, 1978. When the tenant did not vacate the building on that date, the landlord commenced this eviction proceeding.

The record supports the finding below that the replacement value of the building was $775,000. The tenant concedes that it never submitted an insurance appraisal and that at all relevant times the insurance policy on the building, in the amount of $600,000, was an 80% coinsurance policy, not a replacement cost policy. We accept County Court's construction of the lease as requiring respondents to provide replacement cost insurance for the building but

not for the contents. We also adopt its finding that the evidence with respect to the state of repair of the premises is insufficient to support a determination that the tenant breached the lease in that regard.

We must, however, reject County Court's holding that while the tenant breached the terms of the lease in that it failed to submit an insurance appraisal and failed to insure the building to full replacement value, the breaches were not so material as to warrant termination of the lease. These breaches exposed the landlord to substantial risk of loss in case of damage to the building—$175,000 if the building were totally destroyed.

The tenant admits receipt of the notice of default and gives no reason for its failure to comply (cf. *Sy Jack Realty Co. v Pergament Syosset Corp.*, 27 NY2d 449). There is no claim of overreaching or misleading conduct on the part of the landlord or that the landlord did not terminate the lease in strict accordance with its terms (see *Fifty States Mgt. Corp. v Pioneer Auto Parks*, 46 NY2d 573; *First Nat. Stores v Yellowstone Shopping Center*, 21 NY2d 630; *Graf v Hope Bldg. Corp.*, 254 NY 1; *Tehan v Peters Print. Co.*, 71 AD2d 101). On the contrary, the landlord's notification that it was insisting on compliance with the insurance provisions was unequivocal and the time allowed for the tenant's performance was more than required by the lease terms. The tenant's only reply *(i.e.*, a letter which stated that it was undertaking a general insurance review and which contained no assurance of future compliance with the lease and no reference to the insurance appraisals or to the requested repairs) was a clear reflection of its decision to disregard the landlord's demand for compliance. To be sure, the termination of the lease will result in substantial loss to the tenant, but financial hardship standing alone does not create a penalty or forfeiture which would warrant equitable relief (see *Fifty States Mgt. Corp. v Pioneer Auto Parks, supra,* p 578). Equity will intervene "to prevent a substantial forfeiture occasioned by a trivial or technical breach" *(Fifty States Mgt. Corp. v Pioneer Auto Parks supra,* pp 576-577) ; however, where the breach is material and where, as here, the tenant has virtually provoked the cancellation by ignoring the landlord's legitimate demands,

it may not call upon a court of equity for assistance by complaining that the consequences of cancellation are severe (see *Matter of Feist & Feist v Long Is. Studios*, 29 AD2d 186, 189; cf. *Fifty States Mgt. Corp. v Pioneer Auto Parks*, *supra*, pp 578-579). As stated by the court in *First Nat. Stores v Yellowstone Shopping Center (supra,* p 638): "Should we hold that the termination of this lease is harsh and inequitable, then the same conclusion can be reached in every instance where a landlord exercises his contractual rights, and, in that event, the right of termination or any other right specified in a lease would be rendered meaningless and ineffectual".

Inasmuch as the lease contains an express nonwaiver clause, there is no merit to respondent's contention that the alleged violations which were the subject of the landlord's notice of default were waived by past acceptance.

Accordingly, the order appealed from should be reversed and the judgment at Greece Town Court reinstated.

CARDAMONE, J. P., DOERR and MOULE, JJ., concur; CALLAHAN, J., dissents and votes to affirm the order on the opinion at Monroe County Court, MARK, J.

Order reversed, without costs, and judgment at Greece Town Court reinstated.