Chiampou Travis Besaw & Kershner, LLP v Pullano (2021 NY Slip Op 02967)





Chiampou Travis Besaw & Kershner, LLP v Pullano


2021 NY Slip Op 02967


Decided on May 7, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, CURRAN, WINSLOW, AND DEJOSEPH, JJ.


1185 CA 20-00151

[*1]CHIAMPOU TRAVIS BESAW & KERSHNER, LLP, AND 45 BRYANT WOODS, LLC, PLAINTIFFS-RESPONDENTS,
v
GERALD F. PULLANO, DEFENDANT-APPELLANT. 






PHILLIPS LYTLE LLP, BUFFALO (DAVID J. MCNAMARA OF COUNSEL), FOR DEFENDANT-APPELLANT.
LEWANDOWSKI & ASSOCIATES, WEST SENECA (BRIAN N. LEWANDOWSKI OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS.


 Appeal from an order of the Supreme Court, Erie County (Deborah A. Chimes, J.), entered January 3, 2020. The order, insofar as appealed from, determined that it would be unconscionable to enforce an acceleration clause. 
It is hereby ORDERED that the order insofar as appealed from is unanimously reversed on the law without costs, those parts of defendant's second counterclaim seeking to enforce the acceleration clause and seeking late charges are granted, and the matter is remitted to Supreme Court, Erie County, for further proceedings in accordance with the following memorandum: Defendant, who was a former partner in plaintiff Chiampou Travis Besaw & Kershner, LLP (CTBK), also held an interest in plaintiff 45 Bryant Woods, LLC (45BW), which owned the building in which CTBK's offices were located. Pursuant to CTBK's Second Amended and Restated Partnership Agreement (agreement), a withdrawing partner who has given the requisite notice is entitled to the "Full Value" of his or her partnership interest, "with such amount being paid in equal quarterly installments over a ten-year period, with interest . . . being paid on the unpaid balance at the time of each quarterly payment."
Defendant opted to withdraw from the partnership and provided the requisite notice. CTBK thereafter executed a promissory note (note) and commenced making the quarterly payments. The note included a provision that, "[i]f this Note or any payment of principal or interest thereon shall not be paid within ten (10) days after any applicable due date, [CTBK] shall pay a late charge equal to five percent (5%) of the delinquent payment." The note further provided that, if CTBK failed to cure any default, "the Note and all indebtedness of [CTBK] [would] become immediately due and payable," and CTBK agreed to be liable for "all costs and expenses (including reasonable attorneys' fees) incurred by [defendant] in the collection of th[e] Note and/or enforcement of any security for th[e] Note."
Upon receipt of the first payment, defendant realized that CTBK was using normal amortization to calculate amounts owed. Defendant believed that the agreement required using fixed principal payments plus interest amortization. When CTBK refused to adjust its payment scheme, defendant sent a notice of default seeking the entire unpaid balance of principal and interest, as well as "all applicable late charges." Ultimately, plaintiffs commenced this action against defendant seeking, inter alia, a determination that its calculation of defendant's full value and its amortization method were correct and a determination that defendant had no further interest in 45BW, and defendant counterclaimed for, inter alia, payment of the unpaid balance pursuant to the acceleration clause.
As a result of various motions and cross motions, Supreme Court issued several decisions and orders, determining that CTBK's calculation of defendant's value in CTBK was correct, that [*2]defendant's method of amortization was correct, that CTBK was in default under the agreement and note and that defendant was not required to withdraw from 45BW. Nevertheless, the court declined to award defendant summary judgment on the issue of acceleration and denied his request for attorneys' fees, without prejudice. The court determined that there were factual questions on the issue whether equity should intervene to relieve CTBK of acceleration of the debt.
Following a nonjury trial, the court concluded that CTBK and defendant had a "bona fide dispute" over the method to be used to calculate payments and that CTBK immediately paid defendant the
" 'calculated shortage' " after the court found CTBK in default and that defendant was not prejudiced by the default. As a result, the court found that enforcing the acceleration clause "would be unconscionable" and denied defendant's second counterclaim, to accelerate the debt. The court granted defendant's request for costs and expenses, including attorneys' fees, incurred in collection under the note. Defendant now appeals from those parts of the order that are adverse to him, and we conclude that the court erred in refusing to enforce the acceleration clause of the note and in refusing to award defendant late charges for the delinquent payments.
With respect to the issue of late charges, although a party cannot seek "late charges for nonpayment of installments claimed to be due after acceleration" (Green Point Sav. Bank v Varana, 236 AD2d 443, 443 [2d Dept 1997]; see Carreras v Weinreb, 33 AD3d 953, 955 [2d Dept 2006]), defendant sought late charges that had accumulated or attached on the payments that were deficient before any acceleration of the note (see Gizzi v Hall, 309 AD2d 1140, 1141 [3d Dept 2003]; cf. Carreras, 33 AD3d at 955; see also Matter of County of Ulster [ERED Enters., Inc.], 121 AD3d 111, 116 [3d Dept 2014], lv dismissed 24 NY3d 988 [2014]). Inasmuch as the note provided for such charges in the event of a default in any payment of principal or interest, we conclude that defendant is entitled to such charges.
With respect to acceleration of the debt, plaintiffs and defendant cite to Fifty States Mgt. Corp. v Pioneer Auto Parks (46 NY2d 573, 576-577 [1979], rearg denied 47 NY2d 801 [1979]) as the seminal case in determining whether equity should intervene to preclude enforcement of the acceleration clause. Assuming, arguendo, that Fifty States Mgt. Corp. applies to actions involving promissory notes in addition to those involving leases and mortgages (see e.g. Letter Grade, Inc. v Jasmine Tech., Inc., 50 AD3d 383, 383 [1st Dept 2008]; Valsirv Realty Co. v Tenenbaum, 304 AD2d 748, 749 [2d Dept 2003]; Suits v Suits, 266 AD2d 813, 813-814 [4th Dept 1999]; Tunnell Publ. Co. v Straus Communications, 169 AD2d 1031, 1032 [3d Dept 1991]), we conclude that this is not one of the "rare cases" in which it would not be equitable to enforce the acceleration clause (Fifty States Mgt. Corp., 46 NY2d at 577). "In the vast majority of instances . . . these clauses have been enforced at law in accordance with their terms . . . Absent some element of fraud, exploitive overreaching or unconscionable conduct on the part of the [obligee] to exploit a technical breach, there is no warrant, either in law or equity, for a court to refuse enforcement of the agreement of the parties" (id.). The Court of Appeals has recognized that unconscionable overreaching may be found in situations where there was "a good faith mistake, promptly cured by the party in default with no prejudice to the creditor" (id. [emphasis added]; see generally Di Matteo v North Tonawanda Auto Wash, 101 AD2d 692, 692-693 [4th Dept 1984], appeal dismissed 63 NY2d 675 [1984]). Although "[e]ach case must be decided on its own particular facts" (Tunnell Publ. Co., 169 AD2d at 1032), "[p]ayment in accordance with contractual terms, in and of itself, does not constitute an injustice" (Key Intl. Mfg. v Stillman, 103 AD2d 475, 478 [2d Dept 1984], mod on other grounds 66 NY2d 924 [1985]), and "financial hardship standing alone does not create a penalty or forfeiture which would warrant equitable relief" (Brainerd Mfg. Co. v Dewey Garden Lanes, 78 AD2d 365, 367 [4th Dept 1981], appeal dismissed 53 NY2d 701 [1981]).
Even assuming, arguendo, that the court properly determined that there was a good faith mistake by CTBK and an absence of prejudice to defendant, we conclude that CTBK did not promptly cure the default and that defendant did not engage in any fraud, exploitive overreaching or unconscionable conduct that would justify a court to refuse to enforce the terms of the note.
After the court determined that CTBK was in default, it promptly paid the money that would have been due to defendant had the correct amortization method been used, i.e., the " 'calculated shortage.' " It did not, however, pay any of the late charges or any other amounts due [*3]as a result of its default and litigation. The note specifically states that a default includes the failure to perform any other part of the note, and the note imposed a late charge for "any" delinquent payment of principal or interest. The "word 'any' means 'all' or 'every' and imports no limitation" (Zion v Kurtz, 50 NY2d 92, 104 [1980], rearg denied 50 NY2d 1060 [1980]). Thus, under the terms of the note, CTBK was required to pay a late charge and, inasmuch as no late charges were paid to defendant, CTBK did not promptly cure or attempt to cure the entire default. As a result, we conclude that equity should not intervene to relieve CTBK of enforcement of the acceleration clause of the note. We therefore reverse the order insofar as appealed from, grant those parts of defendant's second counterclaim seeking to enforce the acceleration clause and seeking late charges, and we remit the matter to Supreme Court for a calculation of the amount of late charges owed to defendant as well as the amount of the accelerated debt.
Entered: May 7, 2021
Mark W. Bennett
Clerk of the Court