GENERAL ACCEPTANCE CORP., Appellant, *v.* MASMO, INC., Formerly Known as MASSACHUSETTS MOHAIR PLUSH COMPANY, INC., Respondent.

First Department, October 30, 1969.

*William Glatzer* of counsel (*Glatzer, Glatzer & Evans,* attorneys), for appellant.

*Julius Komissaroff* of counsel (*Albert M. Kaufman* with him on the brief; *Ballon, Stoll & Shyman,* attorneys), for respondent.

MARKEWICH, J. This suit is upon a promissory note for $1,090,696.03, with a second cause for counsel fees. Summary judgment was denied to plaintiff-appellant by Special Term on the ground of existence of triable issues " including whether, under certain agreements executed simultaneously with the note, plaintiff was first obligated to sell a certain property to satisfy the debt ". We hold that there are no such issues of fact, and that careful reading of the " agreements executed simultaneously with the note " reveals a complete absence of real defenses available to defendant-respondent.

According to the record, plaintiff General Acceptance Corp. (GAC) entered in 1961 upon a course of lending money to Buckeye Incubator Company (BI) on the security of accounts receivable purchased from BI, prior to which, BI's parent company, Buckeye Corporation (BC), guaranteed the loans so to be made. In addition to the purchased receivables, plaintiff received various other instruments, inclusive of a second " deed of trust ", which is, in practical effect under local law, a second mortgage on a California chicken farm known as Pierce Ranch, subordinate to a first such deed of trust in favor of a bank. Pierce Ranch is the " certain property " referred to by Special Term.

By the end of 1964, the total owed plaintiff by BI exceeded $1,500,000, and plaintiff demanded that BC, guarantor, pay pur-

suant to the agreement. BC delivered to plaintiff its note for $725,000, and, by way of settlement, new financial relationships were created: plaintiff transferred to BC, the parent company, all the collateral it had received from BI, the subsidiary of BC, except certain receivables to be collected directly by plaintiff; as to these retained accounts, and to these only, BC continued as guarantor, its liability being limited however "insofar as and to the extent only of the proceeds which are realized from the premises [Pierce Ranch] by GAC." It was also provided that "GAC shall only look to the premises for recovery under the guaranty." There were other provisions concerning the mechanics of keeping, dealing with, accounting for, and application to the debt of the avails of operation of Pierce Ranch.

Defendant Masmo, Inc. then entered into the picture by its purchase from plaintiff of BC's $725,000 note, giving in return its own note in the amount here sued for, payable in installments over a period of 10 years, without interest, accelerable as to payment of the entire unpaid balance in the event of default, uncured for 30 days, in payment of any installment. It was further agreed in a separate writing that moneys flowing from operation of Pierce Ranch were to be applicable to payment of Masmo's note instead of to BC's note. On the due date of the first installment, October 30, 1966, payment was not made. Neither then nor at any time was there any money in the Pierce Ranch Reserve, the account created to hold the proceeds of operation of the property. The option to accelerate payment was exercised, and suit was commenced on the note. Defendant admitted execution and delivery of the note and the various documents, nonpayment, demand, and all operative facts, but set up four "conditions precedent" to defendant's liability, all said to have been unfulfilled. These were: failure and refusal to account for rents and profits of Pierce Ranch; failure to effectuate sale of the ranch on defendant's demand, in breach of plaintiff's fiduciary duty under the deed of trust; plaintiff's commission of waste in maintenance of the ranch; and plaintiff's refusal to file a claim with the receiver of BI's assets, appointed meanwhile. Two additional defenses were interposed: the absence of liability on defendant's part to pay the note inasmuch as it was to be paid solely out of proceeds of the ranch; and improper invocation of the acceleration clause, plaintiff having failed to perform on its part. Two counterclaims were also interposed: for damage in the amount of the note by reason of the various stated omissions and failures to perform; and the same damage by reason of failure to file a claim against BI's receiver.

There is not a word in any of the documents to substantiate the defenses or the counterclaims; indeed, what does appear speaks to the contrary. As has been said, there were no profits from operation of the ranch, and certainly none received by plaintiff. Plaintiff was not a fiduciary as to the ranch and was not its owner, but a beneficiary of the mortgage-trust arrangement, without power to sell, or to bring about a sale, or to compel the trustee to sell; nor could the trustee sell the property under its strictly limited authority until there had been default by BI, not defendant. The deed of trust required BI, not plaintiff, " to keep said property in good condition and repair " and generally to do those things having to do with maintenance. Plaintiff had no claim against BI or its receiver at the time of default by defendant, nor did any document require any such claim to have been asserted against either BI, or BC under the surviving remnant of the latter's guarantee before demand was made against defendant on the note. The agreements recited that proceeds of the ranch were to be applied to the note, and BC's guarantee was limited in scope to these proceeds, but nothing in any document required that the note be paid solely out of the ranch's proceeds or its sale. Since none of the " conditions precedent " were unfulfilled, nor did they actually exist, there was nothing to prevent invocation of the acceleration clause after default. The counterclaims, being merely repetitious of matter stated in defense, fall for the same reasons, leaving defendant completely stripped of all legitimate defense against plaintiff's claim, and plaintiff is entitled to summary judgment on its first cause based on the note.

This leaves for determination only the second cause for attorneys' fees incurred, pursuant to agreement between the parties, " for collection after an uncured default." Nothing remains to be ascertained except the amount thereof, and therefore, the order appealed from should be reversed on the law, with costs, and the motion for summary judgment granted on both causes of action, the second cause being, however, severed and remitted to Trial Term for assessment thereunder.

McGivern, J. (dissenting). Special Term was correct in not awarding summary judgment in the sum of $1,090,693.03, based upon an asserted acceleration of payments arising out of the default on a first installment of a promissory note which in turn embraced other complex and not unambiguous agreements. The real intent of the parties respecting the availability of the Pierce Ranch property as recourse for payment, is not clear from the documents; and whether there rested a duty upon the

plaintiff to file a claim with the receiver of the Buckeye Incubator Company raises a question which is not on this record determinable. Significantly lacking is an affidavit of anyone with personal knowledge of the 1964 negotiations, and tending to contradict the defendant's position. Noteworthy also is that almost a year has passed since the entry of the challenged order and the perfection of the appeal therefrom, a factor which greatly mitigates claimed prejudice to plaintiff from denial of summary judgment by Special Term. In any event, in my judgment the record fails to indicate that plaintiff's claim is one ripe for summary judgment. As frequently stated, " summary judgment is a drastic remedy and should not be granted where there is any doubt as to a triable issue " (*Moscowitz* v. *Garlock*, 23 A D 2d 943).

MᴄNᴀʟʟʏ and Sᴛᴇᴜᴇʀ, JJ., concur with Mᴀʀᴋᴇᴡɪᴄʜ, J.; MᴄGɪᴠᴇʀɴ, J., dissents in opinion in which Cᴀᴘᴏᴢᴢᴏʟɪ, J. P., concurs.

Order entered October 8, 1968, reversed, on the law, with $50 costs and disbursements to the appellant, and the motion for summary judgment granted on both causes of action, the second cause being, however, severed and remitted to Trial Term for assessment thereunder. The Clerk is directed to enter judgment accordingly.

Hᴀʀʀɪᴇᴛ Y. Cᴏᴏᴘᴇʀ, Appellant, *v.* 140 Eᴀsᴛ Assᴏᴄɪᴀᴛᴇs et al., Respondents, et al., Defendant.

First Department, October 30, 1969.