SHELL OIL COMPANY, Appellant-Respondent, v LAWRENCE McGRAW et al., Respondents-Appellants, et al., Defendants.

Fourth Department, May 30, 1975

Costello, Cooney & Fearon (Donald L. Nichols of counsel), for appellant-respondent.

Lombardi, Devorsetz, Stinziano & Smith (Yaffee & Yaffee, by Victor Hershdorfer, of counsel), for respondents-appellants.

SIMONS, J. Plaintiff agreed to lease defendants' land in Camillus, New York, for a gas station site. The cost of constructing the station was to be loaned to defendants by Shell and the debt satisfied by rental paid under the lease. In furtherance of this arrangement, the parties executed a financing agreement by which plaintiff was to loan up to $112,037.00 in periodic advances upon the condition precedent that defendants submit proof satisfactory to Shell that all bills for labor and materials were fully paid. Under paragraph 9 of

the agreement the advances were secured by a mortgage which was executed and recorded. Upon failure of the defendants to satisfy any condition precedent, paragraph 10 of the financing agreement permitted termination before the full principal had been advanced, upon giving defendants appropriate notice. In such event the defendants became liable for the full amount of the advances together with all interest due. If the full principal was advanced, the financing agreement terminated and a promissory note, secured by a partial assignment of rent and by the same mortgage, took the place of the financing arrangement.

Prior to payment in full by Shell it terminated the financing agreement and accelerated the debt pursuant to paragraphs 9 and 10. It did so because defendants had allowed various suppliers and subcontractors to remain unpaid and mechanic's liens to be filed against the property. Also, various State and Federal tax liens totaling $14,108.68 (and an additional one of $3,594.18 filed in May, 1972) had been filed against the property from 1968–1971. By letter of October 12, 1971 Shell warned defendants to satisfy the suppliers and subcontractors' claims. Nevertheless, on November 19, 1971 the first mechanic's lien was filed, soon to be followed by several others. In February, 1972 the parties met with the defendants and officers of defendants' bank and tried unsuccessfully to clear the title before closing the transaction. By defendants' records there were unpaid charges, exclusive of taxes, amounting to $39,586. (The station had been completed and Shell had taken possession under the lease on November 2, 1971.) When defendants did not satisfy these claims, Shell sent a letter of March 7, 1972 declaring the financing agreement terminated and demanding payment of all advances and interest in 30 days. In August, 1972 it commenced this foreclosure action. Shell claims $110,827.33.

Special Term concluded that Shell did not effectively exercise its right to terminate the financing agreement, and that Shell had been guilty of inequitable conduct in withholding rental payments after it took possession in November and in failing to assist defendants to solve their financial problems. It is alleged, but not proved, that Shell was also guilty of delaying advances to the detriment of defendants and that Shell waived any default by allowing the station to be completed and taking possession after it had knowledge of the unpaid claims.

We disagree with Special Term's conclusion that Shell ineffectively exercised its express contractual right to terminate the financing agreement upon defendants' failure to pay suppliers and subcontractors. We find no bad faith on the part of Shell in doing so (see *Van Valkenburgh, Nooger & Neville v Hayden Pub. Co.,* 30 NY2d 34, 43). Defendants had been continually certifying that the debts were paid or would be paid. They did so again in November, 1971 when the construction was completed. Thereafter mechanic's liens were filed and while Shell had knowledge of some unpaid claims earlier, it was not informed of the substantial extra charges until February, 1972. Under the circumstances Shell was well within its rights to demand performance of the terms of the agreement (cf. *Grad v Roberts,* 14 NY2d 70, 75).

Defendants contend that Shell's aggressive action in accelerating the indebtedness and withholding advances and rent frustrated the arrangement and misled defendants and justified the trial court in denying foreclosure on equitable grounds (see *Fleischer v Terker,* 259 NY 60, 63–64; *Harry Kresner, Inc. v Fuchs,* 238 App Div 844; cf. *Pizer v Herzig,* 120 App Div 102, 107–108). Just as there can be little doubt about the results from Shell's termination of the agreement, there is no doubt about its right to accelerate, and a court of equity may not relieve a defaulting debtor from the consequences of his act merely because the results are harsh *(Graf v Hope Bldg. Corp.,* 254 NY 1; *Jamaica Sav. Bank v Cohan,* 36 AD2d 743). While Shell had the privilege of advancing funds over and above the principal amount stated in the agreement in the case of unexpected expenses to defendants, and in fact did so on one occasion, it was under no obligation to advance additional funds or to release the retained principal sums to aid defendants when defendants breached the contract.

Shell took possession on November 2, 1971 and rent was due under the lease on that date. The rent was $1,308 per month plus gallonage. Three hundred dollars of this rent may or may not yet have been assigned to defendants' bank to secure a line of credit, the record is not clear on the point. Originally it was planned that the sum of $1,008 was to be assigned to Shell to pay principal and interest on the construction loan. That assignment never became effective and at least this unassigned portion of rents accruing during occupancy would be payable to defendants unless Shell had the right to withhold it. In withholding the rent Shell relied on provisions of the lease which permitted it to do so if defendants' title was

disputed or if they owed Shell money. The first mechanic's lien was filed on November 19, 1971, and although the construction debt was not technically defaulted until the spring of 1972, the title of defendants was jeopardized by the filing of the first mechanic's lien in November (Lien Law, § 4). Therefore, the only rent obligation was that which accrued for the month of November, 1971 before the mechanic's lien was filed. That sum, even assuming there was no assignment of the right to the proceeds, was not sufficient to satisfy the substantial claims against the mortgagors.

The fact that Shell accepted at face value prior certification that the bills were paid does not constitute a waiver of its rights subsequently exercised. Clearly, by March of 1972 there were substantial claims against defendants and the property which secured Shell's construction loan, and its actions in protecting its rights were not inequitable.

Plaintiff has established its right to foreclosure against the mortgagors. The matter should be remitted to Supreme Court, Onondaga County, for further proceeding to determine the amount of the debt and the rights of other parties.

MOULE, J. P., CARDAMONE, MAHONEY and GOLDMAN, JJ., concur.

Judgment unanimously reversed on the law and facts without costs and matter remitted to Supreme Court, Onondaga County, for proceedings in accordance with opinion by SIMONS, J.