KEY INTERNATIONAL MANUFACTURING, INC., Respondent, v
IRWIN STILLMAN, Appellant, et al., Respondent.

Second Department, October 15, 1984

**APPEARANCES OF COUNSEL**

*Suozzi, English & Cianciulli, P. C. (Joseph A. Suozzi, Brian Michael Seltzer* and *Kenneth L. Gartner* of counsel), for appellant.

*Shaw, Goldman, Licitra, Levine & Weinberg, P. C.* (*J. Stanley Shaw* and *Jessie I. Levine* of counsel), for respondent.

OPINION OF THE COURT

TITONE, J. P.

This case involves a complex commercial transaction entered into by two sophisticated businessmen. At issue is the enforceability of an acceleration clause contained in the contract. We hold the plaintiff to the consequences of its bargain.

In 1981, appellant Stillman sold certain real property to plaintiff. Two million dollars of the total purchase price was deferred, on terms, until July 31, 1991. Stillman was given four $500,000 notes payable on that date, secured by means of letters of credit, to be drawn on by Stillman in the event of default in payment. Each note was to bear 6% per annum interest, payable on the first of each month.

It appears that while the notes had a 10-year duration, the letters of credit could be obtained for only a single year and would have to be renewed annually. The parties accordingly agreed that the letters of credit would expire on July 31 of each year and that plaintiff would obtain replacements on or before the preceding June 30, i.e., a full month before the expiration date. The agreement also provided that plaintiff was to have a 15-day grace period in which to cure any failure to deliver the new letters of credit and, in the event of such a default, Stillman could accelerate the due dates of all of the notes and receive payment of the accelerated debt by drawing on the expiring letters of credit before they lapsed. The notes bore such a legend and there was no requirement that Stillman give notice before he exercised that option.

In 1982, plaintiff failed to deliver the new letters of credit by the end of the contractual grace period. On July 19, therefore, Stillman presented the proper documentation to defendant Manufacturers Hanover Trust Company, the issuing bank, and the next day received four bank checks, each in the sum of $500,000, and indorsed these checks over to his broker in payment for his purchases of Treasury Bills. Before the checks cleared, however, plain-

tiff obtained an ex parte order preventing the bank from honoring them and commenced this action.

On cross motions, Special Term relieved plaintiff of its default under the contract, finding that Stillman had exploited "a technical breach relating to a pure collateral matter". We disagree and reverse.

Acceleration clauses are quite common and are generally enforced according to their terms (e.g., *Fifty States Mgt. Corp. v Pioneer Auto Parks,* 46 NY2d 573, 577; *Conditioner Leasing Corp. v Sternmor Realty Corp.,* 17 NY2d 1; see Mandel, The Preparation of Commercial Agreements [1978 ed], p 57). It is only "in rare cases" that the clause will be denied enforcement under equitable principles (*Fifty States Mgt. Corp. v Pioneer Auto Parks, supra,* p 577). As the Court of Appeals has noted, "[a]bsent some element of fraud, exploitive overreaching or unconscionable conduct * * * to exploit a technical breach, there is no warrant, either in law or equity, for a court to refuse enforcement of the agreement of the parties" (*Fifty States Mgt. Corp. v Pioneer Auto Parks, supra,* p 577).

This is not one of those "rare cases". The parties are sophisticated entrepreneurs. Plaintiff does not claim that it was misled by Stillman or that it failed to take any action based upon representations made by him (cf. *Abel v Paterno,* 245 App Div 285, 291). Since the contract did not provide for notice, the fact that Stillman did not give notice is irrelevant (see *Albertina Realty Co. v Rosbro Realty Corp.,* 258 NY 472, 475-476). Not having followed a leading commentator's blunt advice "never" to enter into a contract containing an acceleration clause "without adding a provision requiring prior written notice of default *and* opportunity to cure the default within a stated grace period" lest "an unintentional default * * * prove disastrous" (Mandel, *op. cit.,* p 57; emphasis supplied), plaintiff is hardly in a position to urge that its absence warrants a modification of the parties' bargained for agreement. This is particularly so here as Stillman made a substantial financial commitment in reliance upon the acceleration provision (see *First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630, 637-638) and the plaintiff has suffered no forfeiture (*Albertina Realty Co. v Rosbro Realty Corp., supra;* see, also, *Ferlazzo v Riley,* 278 NY 289, 292).

Nor can plaintiff's breach be viewed as trivial or inconsequential. The obligation to make timely replacement of the letters of credit was an essential component of the agreement and the acceleration provision was the subject of extensive give and take negotiations. It was obviously designed to protect Stillman by giving him a sufficient period of time to draw on the expiring letters of credit in the event of a default. Furthermore, it has been held that the doctrine of insubstantial or *de minimis* default has no application in measuring performance of the terms of commercial paper (*Stream v CBK Agronomics,* 79 Misc 2d 607, 609, mod on other grounds 48 AD2d 637).

We simply cannot accept Special Term's suggestion that holding the plaintiff to the consequences of its bargain constitutes an "oppressive result". Payment in accordance with contractual terms, in and of itself, does not constitute an injustice (*Brainerd Mfg. Co. v Dewey Garden Lanes,* 78 AD2d 365, 367, app dsmd 53 NY2d 701). As we noted in *McVey v Simone* (73 AD2d 959, 960), equity may not "reach out to find that a party has substantially complied with the terms of an option clause when he has not, or to rewrite the clause to suit one of the parties. A failure of the magnitude of this plaintiff's is only venial if the other party to the contract is willing to forgive it. While, by its nature, equitable right must always depend upon the facts of a particular case, under the circumstances here prevailing the power of equity should not intervene. Substantial noncompliance with the terms of an option clause cannot be rewarded by a judicial forgiveness that redounds to the detriment of the other party to the contract".

That the result may be harsh to plaintiff is of no moment. "[A] court of equity may not relieve a defaulting debtor from the consequences of his act merely because the results are harsh" (*Shell Oil Co. v McGraw,* 48 AD2d 220, 222 [Simons, J.], app dsmd 40 NY2d 918 [also enforcing an acceleration clause]). Sympathy cannot be permitted to undermine the stability of contractual obligations (*First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630, 637-638, *supra; Jamaica Sav. Bank v Cohan,* 36 AD2d 743, 744).

Moreover, it would appear that plaintiff's efforts to obtain equitable relief came too late (cf. *Naum v Naum Bros.,*

90 AD2d 960, mot for lv to app den 58 NY2d 606; *Colonie Block & Supply Co. v Overmyer Co.,* 35 AD2d 897; *General Acceptance Corp. v Masmo, Inc.,* 33 AD2d 57). Stillman had already exercised his right to accelerate and, therefore, "absent a showing of fraud, mutual mistake or other acceptable basis of reformation" Special Term was without power to read into the agreement that plaintiff had additional time to cure its default and rescind Stillman's option to accelerate (*First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630, 637, *supra; see First Commercial Bank v Gotham Originals,* 101 AD2d 790, 791; *Mann Theatres Corp. v Mid-Island Shopping Plaza Co.,* 94 AD2d 466, 475-477, affd 62 NY2d 930).

Finally, we would also note that it was improper for Special Term to have restrained the bank from paying the proceeds of its cashier's checks. Such a check is the primary obligation of the bank and is accepted upon its issuance (*Dziurak v Chase Manhattan Bank,* 44 NY2d 776, 777). Thus, pursuant to section 4-303 (subd [1], par [a]) of the Uniform Commercial Code, legal process cannot terminate a bank's duty to pay such an instrument (*Florida Frozen Foods v National Bank & Trust Co.,* 81 AD2d 978, 979, mot for lv to app den 55 NY2d 601; *Kaufman v Chase Manhattan Bank,* 370 F Supp 276, 278; see, also, *First Commercial Bank v Gotham Originals,* 101 AD2d 790, *supra*). Indeed, we cannot perceive why the bank has failed to object to the imposition of restraint.

Similarly, inasmuch as the only damage to the plaintiff was monetary and no fraud was involved, there would have been no basis to enjoin payment of the letters of credit (Uniform Commercial Code, § 5-114; *Sperry Int. Trade v Government of Israel,* 670 F2d 8; *KMW Int. v Chase Manhattan Bank,* 606 F2d 10; *Fertico Belgium, S.A. v Phosphate Chems. Export Assn.,* 100 AD2d 165; *Mount Carmel Energy Corp. v Marine Midland Bank,* 82 AD2d 729; *Foreign Venture Ltd. Partnership v Chemical Bank,* 59 AD2d 352; cf. *United Bank v Cambridge Sporting Goods Corp.,* 41 NY2d 254). Equitable relief, therefore, would be inappropriate.

For the reasons stated, the order should be reversed insofar as appealed from, on the law, plaintiff's motion for

summary judgment should be denied, defendant Stillman's cross motion for summary judgment granted, defendant Manufacturers Hanover Trust Company's motion to dismiss defendant Stillman's cross claim against it denied and it should be declared that plaintiff is in default under the subject notes and that defendant Stillman is entitled to receive payments under the four letters of credit.

RUBIN, J. (dissenting). I disagree with my learned brethrens' conclusion that the instant case is not one of those "rare cases" where an agreement providing for the acceleration of the entire debt upon default of the obligor may be denied by utilization of equitable principles. In my opinion, the facts justify equitable intervention to prevent a forfeiture of credit. Accordingly, I dissent and vote to affirm the order of Special Term insofar as appealed from.

In *Fifty States Mgt. Corp. v Pioneer Auto Parks* (46 NY2d 573) the Court of Appeals was confronted with the question of when equity should intervene to bar enforcement of an acceleration clause. The tenant in *Fifty States* negligently defaulted in the payment of the August rent because of a misaddressed envelope. When the tenant failed to cure after receiving notice of the default, the landlord opted to accelerate future rent due for the balance of the 20-year lease in accordance with the terms of the parties' agreement. The Court of Appeals held that since there was no element of fraud, exploitive overreaching or unconscionable conduct on the part of the landlord to exploit a technical breach, there was no warrant, either in law or equity, for the court to refuse enforcement of the agreement of the parties. Noting (p 577) that such refusal was granted only in "rare cases", the court suggested a fact pattern which would warrant equitable intervention. The court indicated that in view of the fact the initial failure to tender timely payment of the August rent was due to clerical error, equitable relief would have been available had the tenant immediately cured upon discovery of its error in the absence of prejudice to the landlord, citing with approval Chief Judge Cardozo's dissenting opinion in *Graf v Hope Bldg. Corp.* (254 NY 1, 12-14), and the case of *100 Eighth Ave. Corp. v Morgenstern* (4 AD2d 754). The court went on to state: "In such a case, the failure of the landlord to

accept a cure for a trifling mistake without prejudice to himself and then seek enforcement of the acceleration clause would be at least exploitive and, perhaps, unconscionable (see *Giles v Austin,* 62 NY 486, 493-494; cf. *Jones v Gianferante,* 305 NY 135, 138)" (*Fifty States Mgt. Corp. v Pioneer Auto Parks, supra,* p 579).

This pronouncement can only be construed as an indorsement by the Court of Appeals of Chief Judge Cardozo's dissenting position in *Graf* that equity may relieve against the effect of a good-faith mistake, promptly cured by the party in default with no prejudice to the creditors to prevent unconscionable overreaching (*Graf v Hope Bldg. Corp., supra,* pp 7-15; accord *J.N.A. Realty Corp. v Cross Bay Chelsea,* 42 NY2d 392, 398-400; *Karas v Wasserman,* 91 AD2d 812; *Blomgren v Tinton 763 Corp.,* 18 AD2d 979; *100 Eighth Ave. Corp. v Morgenstern,* 4 AD2d 754, *supra; More Realty Corp. v Mootchnick,* 232 App Div 705; *Scelza v Ryba,* 10 Misc 2d 186; *Domus Realty Corp. v 3440 Realty Co.,* 179 Misc 749, affd 266 App Div 725).

Whether a creditor is taking an unconscionable advantage of the letter of his bargain will depend upon the circumstances. The presence of the following facts are some indicia of unconscionable overreaching: the default is the product of mistake or inadvertence; a cure is immediately tendered upon discovery of the breach; the default is limited to a technical or trivial breach; acceptance of the cure would not prejudice the creditor whereas insistence upon an adherence to the letter of the contract results in a substantial forfeiture to the obligor; and the creditor indicates by his conduct that he appreciates the mistake and has attempted by silence and inaction to turn it to his own advantage (see *Graf v Hope Bldg. Corp.,* 254 NY 1, 7-15, *supra* [dissenting opn, Cardozo, Ch. J.]; *Fifty States Mgt. Corp. v Pioneer Auto Parks,* 46 NY2d 573, *supra; J.N.A. Realty Corp. v Cross Bay Chelsea,* 42 NY2d 392, *supra; Noyes v Clark,* 7 Paige Ch 179). Said facts are present in the instant case.

Defendant Stillman concedes that plaintiff's default was not willful. The original agreement between the parties called for the renewal of letters of credit by July 31 of each year. At Stillman's request, this was modified to provide

that plaintiff would renew the notes by June 30 of each year, with a 15-day grace period. Any default after July 15 would entitle Stillman to accelerate the amounts due under the notes and draw immediately on the expiring letters of credit.

Plaintiff's controller was the person responsible for renewing the letters of credit. The controller did note the June 30 date on his calendar, but he never received executed copies of the modified notes. Relying on an unsigned copy of the original, unmodified note, which contained the July 31 deadline, he thought his calendar entry was wrong and marked the deadline " 'moved forward' ". The controller planned to renew the letters by July 31, and was completing a formal application for their renewal on July 20, the date on which the Manufacturers Hanover Trust Company, the bank which issued the original letters of credit, honored Stillman's demand for payment. According to a vice-president of the bank, the renewal of the letters of credit had been informally approved before June 30, in the course of continuing credit negotiations between plaintiff and the bank. All that had to be done was the paper work. Consequently, the failure to renew the letters of credit by July 15 was an honest, inadvertent mistake.

Second, plaintiff offered to cure immediately upon discovery of its error. Prior to July 20, when the bank's vice-president in charge of plaintiff's account notified plaintiff's secretary of Stillman's demand for payment, plaintiff was not consciously aware that it was in default. In contrast, Stillman was aware of plaintiff's default as early as July 5 or 6, as he called his lawyer to discuss the due date for renewal of the letters of credit (June 30) and the fact he had not yet received the renewal letters. Neither Stillman nor his attorney notified plaintiff of the default. On Friday, July 16, the day after the expiration of the 15-day grace period, Stillman asked counsel to prepare the documentation needed to request payment of the original letters of credit. On Monday, July 19, at or about 3:30 P.M., Stillman presented documentation to the Manufacturers Hanover Trust Company that he had not received the replacement letters of credit and demanded payment. On July 20, prior to honoring the original letters of credit, the bank's vice-

president, with plaintiff's authorization, telephoned Stillman and offered to provide replacement letters immediately. He explained to Stillman that plaintiff's line of credit was good with the bank and the default was inadvertent. In fact, plaintiff's line of credit with the bank was over $30,000,000. The offer was declined, and the Manufacturers Hanover Trust Company issued four $500,000 checks to Stillman, in payment for the letters of credit. Thereafter, plaintiff's secretary twice repeated the offer to immediately renew the letters of credit and requested a meeting with Stillman. A meeting could not be scheduled until July 22, because Stillman was out of town. In the interim, plaintiff obtained an ex parte order, temporarily restraining the bank from honoring the four $500,000 checks, and posted as security with the court a $2,000,000 letter of credit issued by Detroit Bank and Trust Company. At the July 22 meeting, plaintiff's secretary had in his possession specimen copies of the renewal letters of credit which the Manufacturers Hanover Trust Company had prepared and again offered to cure the default. Stillman again declined to accept plaintiff's tender. After the meeting, plaintiff mailed the specimen renewal letters of credit to Stillman's address, nine days prior to expiration of the original letters of credit. These facts conclusively demonstrate an attempt to cure immediately upon discovery of the default.

The majority is of the opinion that plaintiff's breach cannot be viewed as trivial or inconsequential because the obligation to make timely replacement of the letters of credit was an essential component of the agreement. However, the fact a material obligation of the agreement is breached does not *ipso facto* preclude the default from being appropriately characterized as "trivial", "technical" or "inconsequential". For example, in *Fifty States Mgt. Corp. v Pioneer Auto Parks* (46 NY2d 573, *supra*), the tenant's covenant to pay rent at a specified time was an essential part of the bargain, as it represented the consideration to be received for permitting the tenant to remain in possession of the property of the landlord. Yet the Court of Appeals indicated (p 579), albeit in dicta, that a breach of this obligation because of a clerical error, if promptly

cured, could be classified as a "trifling mistake". In *Graf* (*supra*), the mortgagor had failed to pay the full amount of an interest installment within the period of grace due to a mathematical error. Although payment of interest is a material obligation of the mortgagor, the dissent classified the breach as trivial because the amount still owing was small in comparison to the sum actually paid.

Here, the default which precipitated the creditor's exploitation of the acceleration clause did not concern the payment of any installment of principal or interest. Four hundred thousand dollars in principal had been timely paid to defendant Stillman by February, 1982. Payment of the remaining principal, $2,000,000, had been deferred until July 31, 1991. The first installment of interest in the sum of $10,000 per month was not due until January 1, 1983. The default was an inadvertent omission to replace four $500,000 letters of credit by June 30, 1982, or within the 15-day grace period which expired on July 15, 1982. Noteworthy is the fact the original letters of credit did not expire until July 31, 1982.

In assessing the nature of the default, the reason for imposing a specific obligation on the debtor should be ascertained. Where a breach of said obligation is inadvertent and can be readily cured without frustrating the primary purpose behind imposing said obligation, the breach may properly be characterized as trivial or technical in nature.

The purpose of the annual renewal of the letters of credit was to insure that the security for repayment of the debt continued uninterrupted. The provision requiring plaintiff to renew by June 30, a date prior to the expiration of the original letters of credit, was designed to afford Stillman sufficient time to draw on the expiring letters of credit in the event of a default. The parties also agreed to a 15-day grace period apparently to provide plaintiff with some leeway in the event it encountered a delay in renewing or replacing the letters of credit by June 30. Thus, the goal to be achieved was the renewal of the letters of credit within a reasonable period prior to the expiration date of the original letters of credit.

Although the time allotted by the parties to renew the letters of credit was breached, in the instant case the creditor's security for repayment of the debt was never placed in jeopardy because plaintiff tendered renewal letters within nine days prior to the expiration date of the original letters of credit. Here, plaintiff fulfilled its primary obligation by renewing the letters of credit before the original letters of credit expired.

Stillman argued that he was prejudiced by plaintiff's failure to renew the letters by the end of the grace period because of the resulting dwindling period of time in which he could draw on the letters. Nonetheless, the original letters of credit were good until July 31; thus, Stillman was not prejudiced in fact. Further, plaintiff tendered the renewal letters within a reasonable period prior to the expiration date of the original letters of credit as evidenced by the fact only a total of three business days (July 16, July 19 and July 20) were required for Stillman to prepare the documentation needed to present the letters of credit to the bank for payment, and for the bank to check the accuracy of the documentation, to correct any grammatical errors, and to issue payment. It bears repeating that this was not a case where the breach was attributable to a credit problem between the debtor and the bank which was asked to renew the letters of credit. As previously discussed, the default was inadvertent and, prior to payment of the expiring letters of credit, the creditor was informed that no credit problem existed and that renewal letters would be forthcoming immediately upon completion of the paperwork.

Whereas the plaintiff's obligation to provide renewal or replacement letters of credit was an essential part of the bargain, under the facts of this case, the breach of the allotted time for renewing the letters of credit may be properly designated a technical default because the breach in question never, in fact, placed the creditor's security in jeopardy.

Clearly, no damage, inconvenience or prejudice would accrue to Stillman if he accepted plaintiff's tender of the renewal letters. In contrast, strict adherence to the letter of the agreement would constitute a substantial forfeiture to plaintiff.

A provision for acceleration of the entire debt in default of the punctual renewal of letters of credit is not a penalty in the strict sense. Nonetheless, it is analogous to a provision for acceleration of a mortgage in default of punctual payment of taxes or assessments. The importance to the mortgagee of the payment of taxes and assessments has been characterized as an "assurance of security" (*Graf v Hope Bldg. Corp.*, 254 NY 1, 10, *supra* [dissenting opn, Cardozo, Ch. J.]). Because such provisions are so closely akin to a penalty in view of the "forfeiture of credit", courts have held that "equity will relieve against it if default has been due to mere venial inattention and if relief can be granted without damage to the lender (*Noyes* v. *Anderson,* 124 N. Y. 175; followed in *Ver Planck* v. *Godfrey,* 42 App. Div. 16; *Germania Life Ins. Co.* v. *Potter,* 124 App. Div. 814, and cf. *Trowbridge* v. *Malex Realty Corp.,* 198 App. Div. 656)" (*Graf v Hope Bldg. Corp.,* 254 NY 1, 9-10, *supra* [dissenting opn, Cardozo, Ch. J.]).

Here, the provision authorizing acceleration of the entire debt in default of the renewal of letters of credit by the allotted period is also closely akin to a penalty, due to the forfeiture of credit, while the entire debt remained secured by unexpired letters of credit. Since the default was due to mere venial inattention and relief can be granted without damage to Stillman, equity would justify the court in transcending the period of grace established by the parties' agreement and substituting another allotted period that would not jeopardize the creditor's security.

Furthermore, the forfeiture is not limited to a loss of interest on the money advanced (cf. *Fifty States Mgt. Corp. v Pioneer Auto Parks,* 46 NY2d 573, *supra*).

According to plaintiff, on the date the parties agreed to the terms of sale, the single principal payment of $2,000,000 due on July 31, 1991 reflected a negotiated settlement of the future value of Stillman's interest in the parcel of property, and not a present value of $2,000,000. Based on plaintiff's computations, the present value of the deferred principal was less than $1,000,000. Consequently, permitting Stillman to receive payment of the principal nine years in advance worked a forfeiture to plaintiff of over $1,000,000.

It can also be inferred from Stillman's conduct that he appreciated the consequences of plaintiff's mistake and had attempted by silence and inaction to take advantage of a default so easily averted and so plainly unintentional. Approximately 10 days before the period of grace expired, Stillman was cognizant of plaintiff's failure to provide renewal letters by June 30. Nevertheless, he made no attempt to notify plaintiff or to demand that the letters be renewed before July 15. The first day after the period of grace expired, Stillman took steps to exploit the default by directing his attorney to prepare the necessary documentation to present the letters of credit to the bank for payment. Without notice to plaintiff, presentment of the letters of credit took place on the next business day. Prior to receiving payment, Stillman was cognizant that the default was unintentional and could be readily cured while his original security for the debt remained in effect. Nevertheless, he rejected three separate offers to renew the letters of credit and two subsequent tenders of the renewal letters. Upon receipt of four $500,000 checks in payment of the letters of credit, Stillman immediately indorsed them and instructed his broker to purchase Treasury Bills.

Although Stillman was not required by the terms of the agreement to give formal notice of the default to trigger the acceleration clause, his silence and subsequent conduct is analogous to that of the mortgagee in *Graf* (*supra*). In that case, the parties' agreement also did not require formal notice. Addressing the mortgagee's conduct, Chief Judge Cardozo stated: "The holder of this mortgage must have understood that he could have his money for the asking. His silence, followed, as it was, by immediate suit at the first available opportunity, brings conviction to the mind that he was avoiding any act that would spur the mortgagor to payment. What he did was almost as suggestive of that purpose as if he had kept out of the way in order to avoid a tender (*Noyes* v. *Clark* [7 Paige Ch 179], *supra*). Demand was, indeed, unnecessary to bring the debt to maturity at law. There is not a technical estoppel (*Thompson* v. *Simpson*, 128 N. Y. 270, 291; Spencer Bower on Estoppel by Representation, pp. 61, 352, 358; cf. Williston, Contracts, vol. 3, §§ 1497, 1548, 1557). The consequence

does not follow that, in conditions so peculiar, the omission to make demand is without significance in equity. Significant it may then be in helping the court to a determination whether the conduct of a suitor in taking advantage of a default, so easily averted and so plainly unintentional, is consistent with good conscience (cf. *Retan* v. *Clark,* 220 Mich. 493)" (*Graf v Hope Bldg. Corp.,* 254 NY 1, 12, *supra* [dissenting opn, Cardozo, Ch. J.]).

Similarly, the fact that Stillman did not demand renewal of the letters of credit prior to July 15 and his conduct subsequent to the default is inconsistent with good conscience as it evinces an appreciation of plaintiff's blunder and an unwillingness to avert it.

In my opinion, all the circumstances conclusively demonstrate that Stillman was taking an unconscionable advantage of the letter of his bargain. By strictly insisting on his contract rights, he exploited a technical breach, which was the product of an honest mistake that was promptly cured, without prejudice to himself, by plaintiff's tender of renewal letters nine days before the original letters of credit expired. In light of these facts, the forfeiture of credit to plaintiff is so oppressive that only by denying enforcement of the acceleration clause and requiring an acceptance of the tender will equity be done.

GIBBONS and O'CONNOR, JJ., concur with TITONE, J. P.; RUBIN, J., dissents and votes to affirm insofar as appealed from, with an opinion.

Order of the Supreme Court, Richmond County, dated November 15, 1982, reversed insofar as appealed from, on the law, with costs to defendant Stillman payable by the plaintiff, plaintiff's motion for summary judgment denied, defendant Stillman's cross motion for summary judgment granted, defendant Manufacturers Hanover Trust Company's motion to dismiss defendant Stillman's cross claim against it denied, it is declared that plaintiff is in default under the subject notes and that defendant Stillman is entitled to receive payments under the four letters of credit and matter remitted to the Supreme Court, Richmond County, for further proceedings in accordance with the opinion herewith.