OPINION OF THE COURT
Vincent R. Balletta, Jr., J.
Prior to the commencement of the trial in this action, the attorneys stipulated that a gas station building and other improvements were demolished by the defendants Minassian and Shafrazian in February or March 1985; that the mortgage contained a covenant that the building and improvements could not be demolished without the consent of the mortgagee; that the- mortgage contained a clause giving the mortgagee *544 the right to accelerate payment in the event of a default, and that the balance due on the mortgage is approximately $45,-000.
The plaintiff mortgagee previously owned property at 190 Main Street, Port Washington, which property was leased out for use as a gas service station. The property contained a building, gas tanks and pumps. The property was sold in 1977 to defendant Frederick Krupowicz and a purchase-money mortgage was taken back by the plaintiff herein in the amount of approximately $55,000. Consent was given to the transfer of the property, subject to the mortgage, to the defendant Madison Fuel and Repair, Inc. in 1978, which corporation was owned and controlled by the defendant Peter Blasucci. Thereafter, further consent to a transfer of the property, subject to the mortgage, was given in July 1984, and ultimately the property was transferred, subject to the mortgage, on September 5, 1984, to defendants Heros Minassian and Vahik Shafrazian.
Although the plaintiff heard rumors about the demolition of the building, his consent was never asked for or obtained, and, as a matter of fact, he testified that a letter objecting to any possible demolition was forwarded by him to the attorney for Minassian and Shafrazian after they acquired title. In the early part of 1985, the building was demolished and the tanks and the pumps were removed.
The property was originally sold by the plaintiff herein for a total of $60,000. The selling price to Minassian and Shafrazian was $165,000. The defendants produced evidence that the value of the property in June 1986 was $220,000 without the building that was demolished, and $233,000 if the building and improvements remained on the premises. The proof consisted of an appraisal made for the plaintiff by Breslin Appraisal Co., Inc., which appraisal was admitted without objection on cross-examination by the defendants’ attorney. The appraisal further defines highest and best use, and indicates that the highest and best use would be for retail or office use in accordance with the existing zoning.
While there is no question that the defendants have breached the terms and provisions of the mortgage, the defendants take the position that the plaintiff’s security has not been impaired and that equity will not, in this case, enforce this "technical” violation of the mortgage.
The defendants concede that the removal of a building is *545 normally a technical violation. They contend, however, that this is a special kind of case since the balance due on the mortgage is small in comparison to the inflated value of the property. They further contend that since the property’s valuation is $220,000 as vacant land, that its highest and best use requires the demolition of the building and the removal of the tanks. The defendants postulate that in reality the land has more value as vacant land since any purchaser would be required to remove the improvements to make maximum use of the property.
The issue before the court, namely, whether foreclosure should be denied where the value of the vacant property is more than the amount due on the mortgage even though the mortgagors have breached the mortgage by razing the buildings located on the property, is apparently one of first impression. The court has been unable to discover any prior New York cases dealing with this issue, and neither side has been able to direct the court’s attention to any such cases.
In the instant case, it is not disputed that the defendants razed the building and removed the gas tanks in violation of the clear and express terms of the mortgage, which provides:
"3. That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee * * *
"14. That the whole of said principal sum and interest shall become due at the option of the mortgagee * * * (b) after the actual or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee”.
Further, at no time did the defendants have the consent of the mortgagee to the removal of the building and gas tanks.
While it is true that an action to foreclose a mortgage is an action in equity (Jamaica Sav. Bank v M. S. Investing Co., 274 NY 215, 219 [1937]), it is equally true that "a court of equity may not relieve a defaulting debtor from the consequences of his act merely because the results are harsh” (Shell Oil Co. v McGraw, 48 AD2d 220, 222 [4th Dept 1975]).
The well-established general rule in New York is that a mortgagor is bound by the terms of his contract, including the acceleration clause, and that "a mortgagee is entitled to enforcement of the mortgage contract according to its tenor absent bad faith, fraud, or unconscionable conduct on his part (see Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 *546 NY2d 175; Ferlazzo v Riley, 278 NY 289).” (Hatton v Quad Realty Corp., 100 AD2d 609, 610 [2d Dept 1984].)
Further, "[a]ny sympathy which the mortgagors’ situation might arouse cannot be permitted to undermine the stability of contractual obligations” (Jamaica Sav. Bank v Cohan, 36 AD2d 743, 744 [2d Dept 1971]; also see, Graf v Hope Bldg. Corp., 254 NY 1, 4-5 [1930]).
The main cases cited by the defendants in support of their argument are distinguishable from the instant action.
Loughery v Catalano (117 Misc 393 [Sup Ct, Bronx County 1921], affd 207 App Div 895) was a foreclosure action brought because the defendants had altered a building without the mortgagee’s consent. The court declined to grant a foreclosure and ruled in favor of the defendants, noting: "The work complained of did not change the character of the building or the use to which it was put when the mortgage in suit and the bond secured thereby were executed and delivered. The cutting of a door in the foundation wall and the enlarging of a window was done in order to dry up the cellar in the building and to prevent the flooding of the same; the brick foundation piers were rebuilt because of the unsafe condition of the same, and a window in the rear of the apartment on the first floor was cut down in order to provide safe access to the yard by means of an open porch. All this work was therefore necessary and proper in order to preserve the building and the proper and convenient use thereof. Moreover, the evidence satisfies me that such work was not substantial in character; the foundation walls of the building have not been weakened and the value of the plaintiff’s security has not been impaired * * * The plaintiff does not claim that he has been injured by the alterations, or that his security has been impaired in the slightest degree. On the contrary it would appear from the evidence that they have enhanced the value of the property.” (117 Misc, at 395-396; emphasis added.)
In the instant case, unlike Loughery (supra), the razing of the building and the removal of the gasoline tanks obviously changed the character of the building and the use to which it was put, and, clearly, the work did not preserve the building. Further, the work done by the defendants in this case cannot be said to be insubstantial in character. Since the building was part of the security for the mortgage, razing the building must necessarily impair that aspect of the security for the mortgage. Finally, unlike the Loughery case, the defendants *547 herein did not present any evidence that the work they performed actually enhanced the value of the property.
The other cases cited by the defendants are also distinguishable. In Rockaway Park Series Corp. v Hollis Automotive Corp. (206 Misc 955 [Sup Ct, NY County 1954]), the court dismissed a foreclosure action, apparently upon an estoppel theory, namely, the mortgagee’s silence and inaction, despite his knowledge of the breach of the mortgage terms, prevented foreclosure. The mortgage had contained a provision that the whole principal sum would become due and payable at the option of the mortgagee in the event of the mortgagor’s failure to comply with the requirements of any department of government. The court held that where the violations urged as a basis for foreclosure of the mortgage had been filed against the premises by the City Department of Housing and Buildings several years before, and the mortgagee had taken no action to require the removal of the violations until the mortgagor had commenced work for such removal several years after the purchase and did not bring the foreclosure action until after the work had been completed and after the actual removal of the violations, the mortgagee was not entitled to foreclosure. Caspert v Anderson Apts. (196 Misc 555 [Sup Ct, NY County 1949]) involved a similar fact pattern and a similar result.
As stated previously, it is the court’s opinion that the building and the gas tanks located on the premises were an integral part of the security of the mortgage. Thus, the original mortgage dated November 9, 1977 between Frank Laber, as mortgagee, and Fred Krupowicz, as mortgagor, clearly states that "the mortgagor hereby mortgages to the mortgagee * * * all that certain plot, piece or parcel of land, with the buildings and improvements thereon erected” (emphasis added). The defendants purchased the property in 1984 subject to that original mortgage.
The court is also reluctant to adopt the defendant’s position for another reason. For the past decade or so, real estate land values have appreciated substantially. So much so, in fact, that the present day values of many parcels are many times more than the amount due on any mortgage on the property. Thus, to accept the defendants’ argument would create a dangerous precedent whereby any landowner, especially homeowners, would be entitled to destroy the building on the property without the consent of the mortgagee merely because *548 the raw land had a value in an amount greater than the principal due on the mortgage.
Despite the fact that real property values in this area have appreciated to the point where the value of the land in this case is more than the amount due on the mortgage, there is no question that the defendants have breached the terms and provisions of the mortgage.
Accordingly, the plaintiff is entitled to a judgment of foreclosure.